# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3588

_____

United States of America,      *
     *

       Appellee,      *   Appeal from the United States
     *   District Court for the
v.      *   Western District of Missouri.
     *

Robert Dale Gray,      *
     *

       Appellant.      *
     *

_____

Submitted: April 14, 1998
Filed: August 11, 1998

_____

Before FAGG and HANSEN, Circuit Judges, and STROM[1], District Judge.

_____

HANSEN, Circuit Judge.

Robert Dale Gray appeals his conviction and sentence for conspiring to distribute a controlled substance in violation of 21 U.S.C. § 846 (1994). Gray argues that the

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

district court[2] erred in denying his requests to withdraw his guilty plea and in imposing a life sentence pursuant to 21 U.S.C. § 841(b)(1)(A). We affirm.

## I. Background

In the summer of 1995, federal agents began investigating a large methamphetamine manufacturing and distribution scheme operated by Randy Schultz. Investigators learned that Gray was one of this scheme's main distributors. Gray's paramour, Patricia Bristol, was also a major methamphetamine distributor in the scheme. After Schultz was arrested in March 1996, Gray and Bristol began to manufacture the methamphetamine themselves. Gray and Bristol also continued to distribute the drugs.

On November 1, 1996, a grand jury returned a three count indictment against Gray. Count I alleged that Gray had conspired to distribute a controlled substance from January 1995 through July 11, 1996, in violation of 21 U.S.C. § 846. Count II alleged that Gray had possessed a firearm as an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Count III alleged that Gray had tampered with a federal witness in violation of 18 U.S.C. § 1512(b). A second indictment was returned on December 18, 1996, alleging that Gray had threatened to murder a federal agent in violation of 18 U.S.C. §§ 115 and 1114. The government filed an information alleging that Gray had at least two prior felony drug convictions and that he would therefore be subject to a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A), if he was convicted of the conspiracy count.

The two indictments were consolidated for a jury trial which commenced on April 28, 1997. On the afternoon of the first day of trial, Bristol, the government's

---

[2]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

initial witness, began to explain Gray's role in the conspiracy to distribute methamphetamine. In the middle of Bristol's testimony, Gray announced his intention to plead guilty to count I of the indictment. Specifically, Gray said, "Your Honor, I'm guilty of possession and distribution. I'm not guilty from [sic] the other three charges. And that girl should be cut loose." (Trial Tr. at 13.) Gray also commented, apparently to the prosecutor, that "I tried to make a deal with you people and you wouldn't make a deal with me." (Id.) The district court immediately called a recess. The parties then agreed to an informal, unwritten plea bargain in which Gray would plead guilty to count I, conspiracy to distribute a controlled substance, and the government would dismiss the remaining counts. Following the recess, the district court held a hearing outside the presence of the jury and formally accepted Gray's guilty plea to the conspiracy count. The government then dismissed the remaining counts.

On May 5, 1997, one week after his guilty plea, Gray moved to withdraw his plea, claiming that the conditions of his confinement immediately prior to his trial and the stress of watching his paramour being "forced" to testify prevented his guilty plea from being knowing, voluntary, and intelligent. The district court denied the motion in a written order filed on May 19, 1997. At his sentencing hearing on September 19, 1997, Gray renewed his request that the court allow him to withdraw his guilty plea. The court again denied the request. The court sentenced Gray to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A), because the conspiracy involved more than one kilogram of a methamphetamine mixture and Gray had at least two prior felony drug convictions. Gray appeals, claiming he should be allowed to withdraw his guilty plea and that the district court erred in sentencing him to a term of life imprisonment.

## II. Analysis

### A. Guilty Plea

Gray first argues that the district court abused its discretion in denying his requests to withdraw his guilty plea. Gray also argues that he did not knowingly and voluntarily plead guilty, rendering his plea unconstitutional. We review the district court's denial of Gray's motions to withdraw his guilty plea for an abuse of discretion. United States v. Prior, 107 F.3d 654, 657 (8th Cir.), cert. denied, 118 S. Ct. 84 (1997). Whether Gray's plea was knowing and voluntary is a mixed question of fact and law that we review de novo. Easter v. Norris, 100 F.3d 523, 525 (8th Cir. 1996), cert. denied, 117 S. Ct. 1322 (1997). In reviewing Gray's claims, we are cognizant that "[a] guilty plea is a solemn act not to be set aside lightly." Prior, 107 F.3d at 657.

Rule 32(e) of the Federal Rules of Criminal Procedure provides that if a defendant moves to withdraw a guilty plea "before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." The defendant bears the burden of establishing the fair and just reason for withdrawal. Prior, 107 F.3d at 657. Although "a defendant seeking to withdraw a plea before sentencing is given a more liberal consideration than someone seeking to withdraw a plea after sentencing, 'a defendant has no absolute right to withdraw a guilty plea before sentencing,' and the decision to allow or deny the motion remains within the sound discretion of the trial court." Id. (quoting United States v. Boone, 869 F.2d 1089, 1091 (8th Cir.), cert. denied, 493 U.S. 822 (1989)). Several factors may be considered in determining whether a court should allow a defendant to withdraw a guilty plea prior to sentencing. These include whether the defendant has established a fair and just reason to withdraw his plea, whether the defendant asserts his legal innocence of the charge, the length of time between the plea and the motion to withdraw, and whether the government will be prejudiced by the withdrawal. Id.; Boone, 869 F.2d at 1091-92. However, if a defendant does not present a fair and just

reason for withdrawal of a guilty plea no need exists to examine the other factors. United States v. Abdullah, 947 F.2d 306, 311 (8th Cir. 1991), cert. denied, 504 U.S. 921 (1992).

It is well-established that "a guilty plea must be both knowing and voluntary" to be constitutionally valid. Parke v. Raley, 506 U.S. 20, 28 (1992). The plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id. at 29. This is because "a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." Id.

Gray argues that the compulsive and emotional manner in which he admitted his guilt during the first day of trial does not indicate a genuine desire to plead guilty. Instead, Gray claims that he proclaimed his guilt in a gallant effort to end the suffering of his paramour while she was being "forced" to testify against him. Gray also contends that the emotional and mental trauma he suffered while incarcerated prior to trial also contributed to his inability to freely decide whether to plead guilty as he observed Bristol testify.

Although it is unusual for a criminal defendant to confess his guilt in open court while a witness is testifying, Gray has failed to show that his decision to formally enter a plea of guilty following a court ordered recess in which he conferred with counsel was anything but a voluntary choice he knowingly made after adequate opportunity for reflection and thought. He has also failed to show any fair and just reason to withdraw his plea. Gray's self-serving, post-plea claims that he was emotionally distraught and unable to voluntarily choose to plead guilty fly directly in the face of his own plea hearing testimony before the district court. Following a recess in which the parties entered into an informal plea bargain, the district court held a plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure. Gray stated to the court that his guilty plea was "of my own free will," and that he understood the

range of punishment he faced, including the possibility of a mandatory life sentence. (Trial Tr. at 19-23.) Although he admitted that his adrenaline was flowing, Gray said it did not affect his judgment. Gray stated that he was satisfied with his counsel and that he had not been threatened or coerced into pleading guilty. He further told the court that he was not under the influence of any substance. Gray admitted that he was a member of the conspiracy to possess and distribute methamphetamine from 1995 through early 1996 and that the amount of drugs involved during this period was approximately 54 ounces.

The district court, which had observed Gray's behavior during the trial and could evaluate his demeanor at the plea hearing, found Gray's post-plea claims to be "inherently unreliable in light of his plea hearing testimony." (Appellee's Adden. at 5.) This credibility determination is clearly supported by the record, and we will not disturb it on appeal. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). We hold that Gray knowingly and voluntarily chose to plead guilty and that the district court did not abuse its discretion in denying Gray's presentence motions to withdraw his plea.

## B. Sentencing

Gray next argues that the district court erred in imposing a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A). Specifically, Gray claims that his prior felony drug convictions arose from the same criminal episode and therefore they may only be counted as one prior conviction under the statute. Because resolution of Gray's claim requires interpretation of the sentencing statute, our review is de novo. See United States v. Williams, 136 F.3d 547, 550 (8th Cir. 1998), petition for cert. filed, __ U.S.L.W. ___ (U.S. June 16, 1998) (No. 97-9553).

Title 21, U.S.C. § 841(b)(1)(A) provides mandatory minimum sentences for drug offenses involving large quantities of controlled substances. Gray admitted that he

conspired to distribute more than one kilogram of a mixture of methamphetamine. Gray therefore satisfies the first requirement of section 841(b)(1)(A)—his offense involves the requisite amount of controlled substance.

To determine the proper mandatory minimum sentence under the statute, we must consider Gray's prior drug felonies. The statute provides an incremental approach to punishment of defendants who repeatedly violate drug laws. See United States v. Blackwood, 913 F.2d 139, 147 (4th Cir. 1990). As applicable to this case, the statute imposes mandatory minimum sentences for defendants who are found guilty of conspiring to distribute one kilogram or more of a mixture or substance containing methamphetamine. See 21 U.S.C. § 841(b)(1)(A)(viii). If such a defendant does not have any prior felony drug convictions, the mandatory minimum sentence is ten years. Id. If such a defendant has one prior felony drug conviction, the mandatory minimum sentence is 20 years. Id. If such a defendant has two or more prior felony drug convictions, the mandatory minimum sentence is life imprisonment. Id.

The structure of this section indicates that "the purpose of this statute is to target recidivism . . . a legitimate and long-held goal of our criminal justice system." United States v. Hughes, 924 F.2d 1354, 1361 (6th Cir. 1991). Because of this purpose, we have held that if two or more prior drug felony convictions "result from acts forming a single criminal episode, they should be treated as a single conviction for sentencing enhancement under section 841(b)(1)(A)." United States v. Millard, 139 F.3d 1200, 1209 (8th Cir. 1998) (citing United States v. Rice, 43 F.3d 601, 605-06 (11th Cir. 1995)); accord United States v. Liquori, 5 F.3d 435, 437 (9th Cir. 1993), cert. denied, 510 U.S. 1063 (1994); United States v. Pace, 981 F.2d 1123, 1131-32 (10th Cir. 1992), cert. denied, 507 U.S. 966 (1993); Blackwood, 913 F.2d at 145-46. As noted above, the issue here is whether Gray's prior felony drug offenses arose from acts constituting a single criminal episode.

On January 26, 1990, Gray was convicted of two counts of felony sale of methamphetamine in a Missouri state court and was sentenced to two concurrent fifteen-year prison terms. See State v. Gray, 812 S.W.2d 935, 936 (Mo. App. 1991). Each count involved Gray's sales of methamphetamine to an informant cooperating with local law enforcement. The first sale occurred on January 26, 1989, after the informant contacted Gray and asked if he had any drugs for sale. Gray told him he had methamphetamine and instructed the informant to meet him at a local motel. The two met that afternoon at the motel, although when the informant arrived Gray did not yet have the drugs. Gray told the informant that the methamphetamine "was just up the road," but that he needed the money "up front." Id. at 937. The informant paid Gray and was told to come back to the room in fifteen minutes. When the informant returned to the room, Gray told him "the guy was on his way" with the drugs and that he could wait in the room, but that he would have to leave when the guy arrived. Id. Approximately half an hour later, a man arrived and the informant was told to leave. The informant later returned to the room and Gray gave him the methamphetamine.

The second sale occurred the following day, January 27, 1989, when the informant again contacted Gray and asked to buy methamphetamine. Gray told the informant to come to the same motel room as the previous day. The informant met Gray at the room and paid him for the drugs. Approximately one hour later a woman entered the room and removed a container containing methamphetamine from her purse. She threw the container to Gray who then handed it to the informant.

Gray's two felony drug convictions are not part of a single criminal episode and were properly considered separate convictions under the sentencing enhancement statute. The two transactions were distinct in time, occurring on separate days, and required separate planning and execution by both Gray and the informant. Each sale was separately arranged by the parties and neither sale was contingent upon the other. The payment for each sale was made separately, and Gray obtained the methamphetamine for each sale from different sources. Gray's receipt of concurrent

sentences for the two counts does not prevent the convictions from constituting separate criminal episodes under section 841(b)(1)(A). See Liquori, 5 F.3d at 438. Further, the fact that the drug sales were only one day apart does not prevent these independent transactions from constituting separate criminal episodes. See United States v. Griffin, 109 F.3d 706, 708 (11th Cir. 1997) ("[T]wo drug transactions occurring on different days—albeit within the same week and in the same general location—constitute separate, unrelated offenses for purposes of sentencing under 21 U.S.C. § 841(b)(1)(A)[.]"). As the Sixth Circuit explained, a separate criminal episode may be "an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." Hughes, 924 F.2d at 1361. Although Gray's two drug sales may have formed a series or pattern of drug transactions, each methamphetamine sale was a separate, punctuated occurrence with a limited duration. We therefore hold that the district court correctly ruled that Gray's two prior felony drug convictions for selling methamphetamine constituted separate convictions for purposes of sentencing pursuant to section 841(b)(1)(A).

## III. Conclusion

Because we hold that the district court did not err in sentencing Gray to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A), Gray's arguments relating to the district court's Sentencing Guideline rulings are moot. We decline to address the arguments Gray makes in his pro se supplemental briefs tendered to this court without leave. We do so without prejudice to any later 28 U.S.C. § 2255 motion Gray may bring. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT