# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-3881/3882

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa |
| Phillip Alexander Johnston, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 9, 2000

Filed:  August 8, 2000

_____

Before BOWMAN, LOKEN, and BYE, Circuit Judge.

_____

BYE, Circuit Judge.

Phillip Alexander Johnston pleaded guilty to a drug conspiracy charge in violation of 21 U.S.C. §§ 841 and 846, and an attempt to escape from custody charge in violation of 18 U.S.C. § 751.  The district court[1] sentenced Johnston, who had two prior felony drug convictions, to life in prison pursuant to the enhancement provisions

_____

[1]The Honorable Harold D. Vietor, Senior United States District Judge for the Southern District of Iowa.

of 21 U.S.C. § 841(b)(1)(A).[2] Johnston challenges, on several grounds, the use of the two prior convictions to impose a mandatory life sentence. He also claims he was promised a sentence reduction for cooperating, and that the government's failure to move for a departure was unconstitutional, irrational, or in bad faith. Finally, he claims the district court erred by not departing for acceptance of responsibility. We affirm.

## BACKGROUND

Between November 1989 and March 1991, Johnston took part in a drug conspiracy that involved conduct in three states — New Mexico, Missouri, and Iowa. He was charged in the district of New Mexico with conspiracy to distribute more than 1000 kilograms of marijuana, and more than 5 kilograms of cocaine. He pleaded guilty, and, in January 1992, was sentenced to 144 months in prison.

In October 1990, during the course of the three-state conspiracy, a search warrant executed at Johnston's home in Iowa uncovered over 200 pounds of marijuana. One month later he was charged in Iowa state court with possession of marijuana with intent to deliver. He did not face that charge, however, until July 1994. While in federal custody on the conspiracy charge, he was brought back to Iowa to plead guilty to the marijuana charge, and was sentenced to five years in prison.

Johnston finished his federal sentence in April 1997; he was then transferred to state custody to complete his state sentence. In August 1997, he was granted early parole to care for his daughter, who had severe back injuries.

---

[2]Johnston received a five-year sentence on the escape charge, to be served concurrent to the life sentence on the drug conspiracy charge.

Johnston was arrested for this current offense on February 24, 1999. He initially asked the Drug Enforcement Administration (DEA) agents who arrested him if there was a way to "make this thing go away."  After the DEA agents made clear that this "thing" would not "go away," Johnston agreed to cooperate.  The information Johnston provided in interviews that day led to the arrests of two of his co-conspirators, Michael Boire and Max Ray.

Johnston claims a DEA agent  promised him during those initial interviews that he would get a sentence reduction for cooperating.  The DEA agent recalled only  that he informed Johnston that any cooperation would be conveyed to the prosecuting attorney, who would determine if it warranted a sentence reduction.

Shortly thereafter, on April 21, 1999, Johnston pleaded guilty to the second conspiracy charge.  The plea was pursuant to a plea agreement in which the government agreed to move for a downward departure if Johnston provided full and complete information about his involvement in the conspiracy.  Prior to the plea, the government complied with 21 U.S.C. § 851 by filing an information alleging that Johnston had two prior felony drug convictions, and was therefore subject to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A).

After his plea, but prior to his sentencing, Johnston tried to escape.  His daughter visited him in jail, giving him a legal pad with hacksaw blades hid in the binding. Johnston used the blades to partially saw through the metal bars and screen on his cell window before the escape was thwarted.

On several occasions after his guilty plea, the government attempted to interview Johnston to obtain complete information about his involvement in the drug conspiracy. For example, the government asked him to provide the names of his five biggest cocaine customers.  Johnston refused to provide any additional information.

-3-

Johnston filed an objection to the government's § 851 notice to use the prior convictions for enhancement purposes. On August 13, 1999, the district court held a hearing to address the § 851 objection. Johnston admitted that he was the person convicted in the prior New Mexico federal and Iowa state court proceedings. Johnston argued, however, that (1) the New Mexico and Iowa convictions arose out of a single conspiracy, (2) the Iowa state court conviction was based on an underlying substantive act that was an object of the single conspiracy, and (3) therefore, the use of both prior convictions for enhancement purposes violated the Double Jeopardy Clause. The district court concluded that there was "no merit" to Johnston's double jeopardy objection.

Johnston also filed a motion to compel the government to move for a substantial assistance departure, based on his initial cooperation on the day of arrest. On August 26, 1999, the district court held an evidentiary hearing to allow both parties to submit evidence regarding the events on the day of arrest. Johnston admitted during the hearing that he had not given complete and full information subsequent to his plea, but claimed that a promise was made on the day of his arrest that entitled him to a departure for his initial cooperation. The district court found that Johnston had not been promised a reduction on the day of his arrest, and that the government's refusal to file a substantial assistance motion was not irrational or in bad faith.

Finally, at the sentencing hearing on October 6, 1999, Johnston argued that he was entitled to a downward departure for acceptance of responsibility because he had immediately assisted authorities, and pleaded guilty soon after his arrest. Because of Johnston's escape attempt, the district court declined to grant a downward departure for acceptance of responsibility.

# DISCUSSION

## I. The Prior Convictions

Johnston argues that the district court erred in considering his two prior drug convictions to impose a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A). Because resolution of this claim requires us to interpret the statute, we review de novo the district court's use of the two prior convictions for enhancement purposes. See United States v. Gray, 152 F.3d 816, 820 (8th Cir. 1998), cert. denied, 525 U.S. 1169 (1999).

### A. Adequacy of the § 851 Hearing

Johnston first contends that there was an inadequate factual inquiry made regarding the "relatedness" of the two prior drug convictions at the § 851 hearing. Johnston argues a remand is required to hold an adequate hearing. We disagree.

A district court is not required to enter findings of fact or conclusions of law regarding a defendant's objection to the government's § 851 notice unless specifically requested. See 21 U.S.C. § 851(c)(1) ("At the request of either party, the court shall enter findings of fact and conclusions of law"). Johnston does not identify where in the record he requested the district court to make a finding of fact regarding the "relatedness" of his two prior convictions.

Our review of the § 851 hearing transcript indicates that Johnston couched his "relatedness" objection only in the context of a double jeopardy challenge. The "relatedness" argument is one of statutory interpretation, however, not a constitutional double jeopardy issue. See, e.g., Gray, 152 F.3d at 821 (holding that the structure of § 841(b) indicates its purpose is to target recidivism, and therefore when prior convictions result from a single criminal episode they should be treated as a single conviction for enhancement purposes); United States v. Blackwood, 913 F.2d 139,

-5-

145-46 (4th Cir. 1990) (interpreting § 841(b)'s reference to prior convictions as meaning "separate criminal episodes, not separate convictions arising out of a single transaction"). The district court held that there was "no merit" to the double jeopardy objection. That finding was adequate to address Johnston's objection in the context in which it was raised.

In addition, a remand for specific fact-finding is generally unnecessary when the record is clearly sufficient to permit meaningful review on appeal. See United States v. Patterson, 946 F.2d 1371, 1372 (8th Cir. 1991). The record before us contains sufficient information regarding the relevant facts of the New Mexico and Iowa convictions for us to determine whether or not the prior convictions result from a single criminal episode for enhancement purposes under § 841(b). Therefore, no remand is necessary.

## B.    The "Relatedness" of the Prior Convictions

Johnston  next contends that the conduct which led to the Iowa state conviction was part of the same criminal episode that led to his New Mexico federal conviction. The Iowa charge was for possession of marijuana with intent to distribute, but also included an allegation of conspiracy. Thus, Johnston claims that because the state marijuana conspiracy occurred during the federal conspiracy (which included moving the marijuana from New Mexico to Iowa), both prior convictions resulted from a single episode of criminal activity and should count as only one conviction.[3]

---

[3]This "relatedness" challenge to the prior convictions is not, in a strict sense, the same as the double jeopardy objection Johnston made before the district court. Therefore, the government could have argued on appeal that Johnston waived it. See 21 U.S.C. § 851(c)(2) ("Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.") Because the government did not argue that the "relatedness"  challenge was waived, we choose

Johnston relies primarily on United States v. Blackwood, 913 F.2d 139 (4th Cir. 1990).  In Blackwood the Fourth Circuit addressed two separate North Carolina state court convictions arising from conduct that occurred on the same day.  Blackwood was arrested while driving a pickup truck carrying a large quantity of marijuana.  Two hours later his hotel room was searched, and another large quantity of marijuana was discovered.  He was charged and convicted on separate indictments for the marijuana in the pickup, and the marijuana in the hotel.  See Blackwood, 913 F.2d at 144-45.  The Fourth Circuit held that § 841(b)'s "increased punishments . . . turn on criminal episodes that occurred at distinct *times*." Id. at 147 (emphasis in original).  The court concluded that Blackwood's two separate convictions stemmed from a single criminal episode on the same day, and thus only counted as one prior conviction for enhancement purposes under § 841(b).  See id.

We addressed the relatedness of prior convictions for § 841(b) enhancement purposes in United States v. Gray, 152 F.3d 816 (8th Cir. 1998).  Gray involved prior convictions for two separate controlled buys made to the same confidential informant, taking place at the same hotel room, and occurring one day apart.  See Gray, 152 F.3d at 821.  We held that the convictions constituted separate criminal episodes for enhancement purposes under § 841(b), stating that a separate criminal episode may be "an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." Id. at 822 (citing United States v. Hughes, 924 F.2d 1354, 1361 (6th Cir. 1991)).

Our resolution of this case is controlled by our decision in Gray.  The conduct which resulted in the Iowa state court conviction was "an incident that [was] part of a series." Id.  Although related to the entire course of events in the ongoing conspiracy charged in New Mexico, the Iowa possession charge  "form[ed] a separate unit within

to address it on the merits.

-7-

the whole." Id. The New Mexico conviction stemmed from conduct spanning three calendar years, while the Iowa conviction stemmed from conduct on a single day, and thus was a "punctuated occurrence with a limited duration." Id.
We therefore conclude that the Iowa conviction arose from a separate criminal episode for enhancement purposes under § 841(b).

**C.     Right to Notice of § 841(b)'s Enhancement Provisions at the Time of a  Prior Conviction**

Johnston contends that his prior convictions cannot be used for enhancement purposes because neither the New Mexico federal judge, nor the Iowa state court judge, notified him prior to his pleas in those matters that the convictions might later subject him to a mandatory life sentence under § 841(b).  That contention is without merit.  A court is not required to inform a defendant of the possibility of being sentenced more severely as a recidivist.  See United States v. Fountain, 83 F.3d 946, 950 (8th Cir. 1996).

Section 841(b) itself gives a defendant clear notice and fair warning of the consequences attached to a third felony drug offense.  Johnston had notice of the enhancement provisions, since they were in effect at the time he committed the instant offense.  Cf. United States v. Washington, 109 F.3d 335, 338 (7th Cir. 1997) (holding that 18 U.S.C. § 3559, the "three strikes" law, gave defendant fair warning of consequences attached to committing new violent offense after being convicted of two or more violent offenses, since § 3559 was in effect at the time defendant committed the offenses that subjected him to life imprisonment).  A court's failure to advise a defendant of § 841(b)'s enhancement provisions, at the time of a plea to a prior felony

offense, does not prohibit the prior conviction from being used to trigger a mandatory life sentence under § 841(b).[4]

## II.    Substantial Assistance

Johnston also contends that the government promised him a sentence reduction on the day of his arrest. He claims that his initial cooperation entitled him to have the government file a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.

The district court held a hearing on Johnston's motion to compel the government to file a substantial assistance motion, at which it found that the government had not promised Johnston a sentence reduction on the day of his arrest. Our review of this issue involves two steps. We first must review that finding of fact for clear error. See United States v. Johnson, 169 F.3d 1092, 1098 (8th Cir. 1999). Second, we must determine whether the government's refusal to make a substantial assistance motion (pursuant to whatever agreement(s) it reached with Johnston) was in bad faith, irrational, or based on an unconstitutional motive. See United States v. Licona-Lopez, 163 F.3d 1040, 1042 (8th Cir. 1999). Resolution of that issue requires us to review de

---

[4]We also note that Congress did not limit the prior felony convictions that could trigger a life sentence to those occurring after § 841(b)'s enhancements provisions became effective in 1988. See, e.g., United States v. Hudacek, 24 F.3d 143, 146 (11th Cir. 1994) (holding that § 841(b)'s enhancement provisions were triggered by conviction that occurred prior to 1988). Johnston's argument, if accepted, would effectively preclude all pre-1988 convictions from being used for enhancement purposes. It was, of course, impossible for courts to give defendants notice of the enhancement provisions before they existed. Since Congress intended pre-1988 convictions to trigger the enhancement provisions, post-1988 convictions also clearly trigger the enhancement provisions despite the fact that a defendant was not notified, at the time, that the conviction might later subject him to life in prison.

novo the district court's interpretation and enforcement of the plea agreement. See United States v. Wilkerson, 179 F.3d 1083, 1085 (8th Cir. 1999).

At the hearing to determine whether Johnston was promised a sentence reduction during his post-arrest interviews, the DEA agent testified that he did not promise Johnston a sentence reduction. Rather, the DEA agent agreed only to convey details of Johnston's cooperation to the prosecutor, who would then decide whether or not to make a motion for a sentence reduction. A second officer who was present during the interviews also testified that he did not hear Johnston promise a sentence reduction. Johnston offered evidence that a promise had, in fact, been made on the day of his arrest. The district court ultimately found that no promise was made.

The district court obviously found the DEA agent to be more credible than Johnston. We are "particularly hesitant to find clear error in the district court 's findings of fact where those findings are based on determinations of witness credibility." United States v. Padilla-Pena, 129 F.3d 457, 467 (8th Cir. 1997). Johnston has failed to show that the district court clearly erred in determining that no promise was made on the day of his arrest.

The district court also determined that the government's failure to file a motion for downward departure was not irrational, in bad faith, or based on an unconstitutional motive. Since we find no factual error in the district court's determination that Johnston was not promised a sentence reduction on the day of his arrest, we look solely to the terms of his subsequent plea agreement to determine whether the government should have filed a motion.

Johnston relies on United States v. Anzalone, 148 F.3d 940, vacated and reh'g en banc granted, 148 F.3d 940, reinstated and reh'g en banc denied, 161 F.3d 1125 (8th Cir. 1998), to contend that the government had an obligation to (at least) make a motion based on his early cooperation that resulted in the arrests of two co-conspirators.

Johnston admits that he subsequently failed to cooperate, but he claims that the government's remedy for that failure was to alert the district court of that fact after making the motion, as grounds to "preclude or severely restrict any downward departure relief." Anzalone, 148 F.3d at 941-42.

Anzalone, however, involved a case where the government's refusal to file a substantial assistance motion was based on reasons other than the nature of the substantial assistance, i.e., the fact that the defendant had recently used and possessed controlled substances in violation of his plea agreement. See id. at 941. Johnston's situation is different from Anzalone, and more like the situation addressed in Wilkerson, where we upheld the government's refusal "based on its conclusion that Wilkerson had not met his duty under the plea agreement to *continue* to cooperate and to provide substantial assistance." Wilkerson, 179 F.3d at 1086 (emphasis added).

Johnston agreed "to *fully* cooperate with the government in its investigation . . . and [to] provide *complete* and truthful information to the attorneys and law enforcement officers of the government." Plea Agreement at ¶ 13 (emphasis added). The government promised to make a substantial assistance motion only "[s]hould the defendant *fully comply* with all of his obligations under this plea agreement." Id. at ¶ 21 (emphasis added).

Johnston failed to cooperate fully with the government subsequent to entering the plea agreement. After signing the plea agreement, Johnston was given multiple opportunities to provide complete information about his involvement. He repeatedly refused to provide any additional information beyond what he offered during his initial interviews at the time of his arrest.

Under these circumstances, it is clear that the government's decision not to file a § 3553(e) motion was based on its evaluation of the nature and quality of Johnston's assistance. This case is distinct from Anzalone, where the refusal to file the motion

was based on reasons unrelated to the nature of the defendant's assistance. On this record, Johnston has failed to show that the government's reason for not filing a motion was irrational, in bad faith, or based on an unconstitutional motive.

We affirm the mandatory life sentence imposed by the district court.[5]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Having determined that the mandatory life sentence was proper, it is unnecessary for us to address Johnston's claim that the district court erred by not departing downward for acceptance of responsibility. See U.S.S.G. § 5G1.1(b) (requiring imposition of a statutorily required minimum sentence when greater than the otherwise applicable guideline range); United States v. Schaffer, 110 F.3d 530, 534-35 (8th Cir. 1997) (holding that district courts are not authorized to depart below the mandatory minimum for any reason (including acceptance of responsibility) except substantial assistance pursuant to 18 U.S.C. § 3553(e)).