IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2009

**CHRISTOPHER LANCE SHOCKLEY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-A-138   J. Randall Wyatt, Judge**

_____

**No. M2008-00143-CCA-R3-PC - Filed March 31, 2009**

_____

A Davidson County grand jury indicted the Petitioner, Christopher Lance Shockley, on four counts of rape of a child and nine counts of aggravated sexual battery. The Petitioner pled guilty to four counts of aggravated sexual battery, and the trial court imposed an effective sentence of sixteen years. This Court affirmed the sentence on appeal. The Petitioner then filed a post-conviction petition claiming that: (1) his guilty plea was not knowingly and voluntarily entered; and (2) he received the ineffective assistance of counsel. The post-conviction court denied relief, and the Petitioner now appeals. After a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

G. Kerry Haymaker, Nashville, Tennessee, for the Appellant, Christopher Lance Shockley.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

**A.  Guilty Plea Hearing**

A Davidson County Grand Jury indicted the Petitioner on four counts of rape of a child and nine counts of aggravated sexual battery. This case arose from the following facts, which were recited by the State at the guilty plea hearing:

Your Honor, had this matter proceeded to trial, in . . . File 2004-A-138, the state would have been prepared to present evidence that indicated that [S.C.][1], whose date of birth is 5/22/90, disclosed to authorities that between the ages of eleven and twelve years of age the [Petitioner] had engaged her in a variety of sexual behaviors. She . . . had disclosed and . . . would have been prepared to testify that the [Petitioner] on multiple occasions fondled her breasts and genitals, as well as kissing her breasts at her residence, located here in Nashville,

[The Petitioner] was, also, interviewed, and in fact, volunteered information, initially, to a DCS worker [that] indicated that he had engaged the victim in a variety of sexual events, including rubbing her breasts and genitals and fingering her and kissing her – her breasts, and that this occurred on multiple occasions, and also, that he had her fondle his penis to the point of ejaculation.

[The Petitioner] made similar types of admissions to authorities, but claims that the victim was twelve years of age at the time. The victim, basically, indicated the same types of behaviors occurred during the time period that she was eleven to twelve. All of these would have occurred on separate occasions.

During the hearing, the trial court explained to the Petitioner the offenses to which he was pleading guilty, the potential sentences for those offenses, his right to a trial by jury and what that would entail, his right to testify at a jury trial, and his right to appeal any jury verdict. The trial court asked the Petitioner if he had any questions, and the Petitioner responded that he did not. The Petitioner attested to the trial court that he had read the entire guilty plea petition and that his trial counsel ("Counsel") had explained it to him. The Petitioner then pled guilty to four counts of aggravated sexual battery, and he agreed to let the trial court sentence him. Subsequently, the trial court held a sentencing hearing, and it ordered the Petitioner to serve sixteen years. This Court affirmed the sentence on appeal. *State v. Christopher Lance Shockley*, No. M2004-02086-CCA-R3-CD, 2005 WL 1683493 (Tenn. Crim. App., at Nashville, July 18, 2005), *no Tenn. R. App. P. 11 application filed*.

### B. Post-Conviction Hearing

At the post-conviction hearing, the following evidence was presented: The Petitioner testified that he initially learned of the charges against him while he was being treated by several doctors. One of those doctors was Dr. Okpaku, who prescribed the Petitioner an anti-depressant, Zoloft, and a sleep aid, Ambien. The Petitioner took the Zoloft daily, and he took the Ambien as needed. He related that the Ambien caused him to "black out . . . at times." The Petitioner said that, on several occasions, he took Ambien to sleep and woke up to find things he did not recall touching were moved around within his room. Additionally, the Petitioner testified that one time after he took Ambien, his uncle found him "up" in the middle of the night and had to put him back in bed, none of which the Petitioner remembered. The Petitioner took Ambien the night before his plea hearing "because [he] was really upset." He said that he "remember[ed] getting up in the middle of the

---

[1] It is the policy of this Court to use initials for the victims of child sexual cases.

night" and that the medicine did not help him sleep "like it normally [did]."  Consequently, the Petitioner took more Ambien.  He said he did not recall waking the morning of his plea hearing, and he only remembers "bits and parts" of being in court.

The Petitioner initially said that he met with Counsel only once before his plea hearing.  The Petitioner then recounted several times that he met with Counsel.  Three such times were when they met in jail before the Petitioner made bond, in Counsel's office when the indictments were not yet available, and in Counsel's office before the plea hearing.  The Petitioner stated that Counsel told him he would receive an eight-year sentence.  The Petitioner thought this was a "bad deal" because of "the circumstances of what happened."  The Petitioner said that Counsel did not explain that the Petitioner would have to register as a sex offender and the ramifications of doing so.  The Petitioner also said Counsel did not go over the plea petition with him.  He stated that he would not have plead guilty if he knew he could have been sentenced to more than eight years.

The Petitioner admitted he had read the guilty plea hearing transcripts, which reflected that the trial judge explained to him the plea's requirements and the possibility of a sentence longer than eight years; however, the Petitioner said that he did not recall that explanation and admonition.  He also said the trial court did not ask him if he was on medication when it accepted his guilty plea.  The Petitioner said Counsel did not discuss an amendment to the plea agreement with him.  Only at the sentencing hearing, of which the Petitioner claimed he did not understand the purpose, did the Petitioner realize he could be sentenced to over eight years.

The Petitioner remembered meeting with Counsel before the sentencing hearing.  He told Counsel he wanted to withdraw his guilty plea because the charges were for "aggravated" sexual battery.  The Petitioner said Counsel became angry and walked out.

On cross-examination, the Petitioner said that he was upset because he was sentenced to sixteen years instead of eight.  He acknowledged that he pled guilty to four charges that all carried a penalty of eight to twelve years in prison.  He also acknowledged that the transcripts of the guilty plea hearing showed that the trial court informed him that it could order his sentences to be served consecutively or concurrently.  The Petitioner said he participated in a juvenile court hearing in which S.C., the victim of his crimes, testified that he did not penetrate her.  Counsel used this testimony denying penetration when negotiating the Petitioner's guilty plea deal with the State.  The Petitioner admitted that, if he had gone to trial, his confession could have been used against him, and that he would have faced a possible sentence of over one hundred years.

The Petitioner testified that he had more than a thirty-day supply of Ambien.  He said that, in addition to the Ambien he took the night before, he had also taken Zoloft and "some" Xanax before the plea hearing, which caused him to not "think[] clearly and rationally" at the hearing.  The Petitioner explained that he did not express any confusion to the judge at the time of the guilty plea hearing because it would have "disrupt[ed] the flow of things."  He said, "I just wanted to go through the motion, the formalities.  I already had a plea agreement for eight years.  So I didn't want to do anything to disrupt that."

3

The Petitioner reiterated that he tried to withdraw his guilty plea within a week's time of the hearing because he learned he was being accused of "violent charges" and that the charged alleged the victim was less than thirteen years old. He said that he did not have the indictment to read the charge that included the reference to the victim's age.

Dr. Samuel Okpaku, a medical doctor and an assistant professor at Vanderbilt University and Meharry Medical College, testified that he treated the Petitioner for depression in 2003 for three months. He prescribed Zoloft for the Petitioner's depression and Ambien for his related sleep difficulties. Dr. Okpaku said he knew of reports where some people who took Ambien fell asleep and did not know they were completing tasks, such as driving. He agreed that "the more Ambien that's prescribed the more likely" such incidents would occur. Dr. Okpaku stated that the drugs he prescribed for the Petitioner could cause confusion and agitation, but he said that "most of the drugs that [he] prescribe[d] can cause confusion." Dr. Okpaku was not aware of an FDA warning that people who take Ambien need to get at least eight hours of sleep after taking it. He felt that the warnings for taking Ambien were "common sense." Dr. Okpaku added that he normally does not prescribe refills. On redirect, Dr. Okpaku said that it was possible the Petitioner had not taken the Ambien as he prescribed it.

On cross-examination, Dr. Okpaku said that prior to the sentencing hearing, he last saw the Petitioner in January 2004.[2] He stated that he normally prescribed a medicine for four weeks and that he had no record of prescribing any medication to the Petitioner after February 2004. Dr. Okpaku said he did not know what the Petitioner's mental state was during the guilty plea hearing, but he stated that the medicine he prescribed was to help the Petitioner think more clearly.

Frankie Shockley, the Petitioner's mother, testified that she hired Counsel to represent the Petitioner on the charges of rape of a child and aggravated sexual battery. She met with Counsel at his office to discuss the plea agreement, and she understood that the Petitioner "would get . . . probably eight years or maybe less." She thought the worst-case scenario was eight years. Shockley said the Petitioner was upset at receiving eight years as a sentence, and he walked out of the meeting. Shockley further described the Petitioner's mood, and she said, "He . . . just seemed to be just not knowing what was going on." She elaborated that he "was depressed. . . . Very depressed." She said the Petitioner had trouble sleeping, and the medication he took to help him sleep made him "lifeless" and caused him to "just lay around." Shockley then testified that she was very surprised at the sixteen-year sentence the trial court imposed, and she opined that she "felt like two or three years with some counseling would be plenty." Shockley clarified that she was not present at the plea hearing.

On cross-examination, Shockley recalled that Counsel talked about the Petitioner's sentences possibly "stacking," but she did not recall hearing about "consecutive sentences." She described her son's mental state the morning of the plea hearing as "very confused" to the point where he "didn't know what was happening."

---

[2] We note that the Petitioner's guilty plea hearing was held on June 10, 2004.

Janet Brewster, a life-long neighbor of the Petitioner, testified that she talked with the Petitioner in the span between his guilty plea hearing and his sentencing hearing. She opined that the Petitioner did not understand the charges against him or how much time he could serve. Brewster said she tried explaining to the Petitioner what the charges meant, which included telling him that "aggravated" meant "violent" and that the crime involved a child under thirteen years old.

On cross-examination, Brewster stated that she heard from the Petitioner's mother about the guilty plea and that she subsequently researched those crimes. The Petitioner's mother told Brewster that the Petitioner did not understand the charges. Brewster said she wanted to clarify the Petitioner's lack of understanding with the court, but she did not want the judge to find her in contempt of court for "standing up and saying this is a one-sided hearing." Brewster said she was dissatisfied with the sentencing hearing.

For the State, Counsel testified that he was a criminal defense attorney and that he represented the Petitioner throughout the proceedings. He said he discussed each charge and the possible penalties with the Petitioner prior to the plea hearing. Counsel stated that there was no "question in [his] mind that [the Petitioner] knew that he was alleged to have engaged in sexual behavior with a child under the age of thirteen." They discussed the requirements of penetration and touching, and Counsel informed the Petitioner of the sentence ranges of fifteen to twenty-five years at one hundred percent for rape of a child and eight to twelve years at one hundred percent for aggravated sexual battery. Counsel said he also told the Petitioner that he would likely receive consecutive sentences if he went to trial. Counsel negotiated the plea deal with the State for four counts of aggravated sexual battery. He said he discussed "the good, the bad, and the ugly" of each offer from the State with the Petitioner.

Counsel said that, when he met with the Petitioner and his family, they discussed each offer and its possible sentence range. He said he explained that, with the four counts of aggravated sexual battery, the Petitioner could serve from eight to forty-eight years. Counsel stated that he never suggested the Petitioner would serve less than eight years or that the Petitioner could receive a better plea offer. Counsel then testified that nothing suggested the Petitioner did not understand the ramifications of pleading guilty. Counsel said of the Petitioner, "He was clearly upset, but not that he did not understand what he was doing." Counsel assured the Court that he would have asked for a continuance if he felt the Petitioner was not "of sound mind."

Counsel said that, between the plea hearing and the sentencing hearing, he explained to the Petitioner the purpose of a sentencing hearing and reiterated that he pled guilty to aggravated sexual battery, and not simply sexual battery, because the victim was under thirteen years of age at the time of the offense. He also explained to the Petitioner that at the sentencing hearing they needed to convince the court the Petitioner was a first time offender and should serve concurrent minimum sentences. Counsel then said he called witnesses on the Petitioner's behalf at the sentencing hearing. Counsel stated that neither the Petitioner nor any member of his family wanted to withdraw the guilty plea. Counsel concluded by saying there was nothing he could have done better on this case.

On cross-examination, Counsel testified that he met "numerous" times with the Petitioner and the Petitioner's mother before the plea hearing. He also met several times with the Petitioner at the jail between the plea hearing and the sentencing hearing. Counsel did not recall the Petitioner ever saying he wanted to withdraw his plea, and he said he would have withdrawn the plea if the Petitioner wanted to do so. Counsel said it was "most likely" that he went over the plea petition with the Petitioner the morning of the plea hearing. While going over the plea petition, Counsel had the Petitioner read it and ask him any questions. He is "sure" that he explained the Sex Offender Registry to the Petitioner, although he does not specifically recall discussing it with the Petitioner. Counsel stated that he felt the deal was good. Counsel did not remember asking the Petitioner if he was taking any medication, and he does not remember the trial court asking the Petitioner such a question, either.

After hearing the evidence presented, the post-conviction court denied the Petitioner's petition for relief. It is from that judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner claims that: (1) he did not plead guilty voluntarily, knowingly, or intelligently; and (2) he received the ineffective assistance of counsel.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

### A. Guilty Plea

The Petitioner claims that he did not plead guilty knowingly and voluntarily because: (1) he was under the effects of medication that compromised his ability to think; and (2) he was not informed that he would have to register as a sex offender.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North*

*Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.* "Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003) (citing *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998)). This Court review mixed questions of law and fact *de novo* with a presumption of correctness "given only to the post-conviction court's findings of fact." *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001)).

### 1. Medication

The Petitioner alleges that, because he took several Ambien the night before the plea hearing, his decision-making abilities were compromised, and that, therefore, he did not act in a knowing or voluntary manner when pleading guilty. The State argues that the post-conviction court accredited Counsel's testimony that he did not have any indications that the Petitioner was not of sound mind.

Addressing this claim, the post-conviction court found the Petitioner failed to carry his burden on this issue, and it wrote:

> The Court finds that there is nothing, other than the testimony of the Petitioner, that would indicate that the Petitioner was under the influence of Ambien at the time of his plea such that he would have been unable to understand the plea agreement and ma[k]e a knowing, voluntary, and intelligent decision to accept the State's offer. The Court finds that the Petitioner has failed to carry his burden in proving that he was under the influence of medication such that he was unable to make a knowing, voluntary decision.

After reviewing the totality of the circumstances, we agree with the post-conviction court that the Petitioner has failed to prove that he was under the influence of medication at the time he entered his plea. The record demonstrates that the Petitioner adeptly and correctly answered each one of the trial court's questions during the guilty plea proceeding. The trial court clearly and accurately explained the charges facing the Petitioner and the potential implication of those charges. Counsel found the Petitioner to be of sound mind during the hearing and noticed no indication that the

Petitioner was under the influence of any medication. Counsel testified he explained to the Petitioner in detail the charges and the plea offer and agreement. Under these circumstances, we conclude that the Petitioner has not proven that he was under the influence of any medication at that time of his guilty plea hearing. The Petitioner is not entitled to relief on this issue.

## 2. Sex Offender Registry

The Petitioner claims that his guilty plea was not knowingly or voluntarily entered because he was not aware that he would have to register as a sex offender as a result of his conviction. The State argues that both Counsel and the trial court informed the Petitioner that he would have to sign up on the sex offender registry.

The post-conviction court found that Counsel informed the Petitioner "that his plea agreement contemplated that he would be classified as a sex offender and forced to register on the Sex Offender Registry." It found that the Petitioner did not provide any proof that he was uninformed about having to sign up with the Sex Offender Registry and that the Petitioner failed to carry his burden on this issue.

On review, we conclude that the Petitioner has not proven that he was unaware he would have to register with the sex offender registry. Counsel testified that he regularly explains the sex offender registry to his clients who are convicted of sex crimes. Additionally, the trial court spoke with the Petitioner about the registry:

> **The Court:** Now, do you, also understand that this will be four convictions on your record, sex related offenses that will be on your record, no matter what happened with regard to the sentence, . . . when you are parolled [sic], at some time in the future, you would have these on your record. You, also, have to sign up on the sexual registry and – and so forth, have certain kind[s] of treatment, probably, definitely, I think. And that's all a part of this, also. And do you understand that?
>
> **The [Petitioner]:** Yes, sir.

The trial court explained to the Petitioner that he would have to register as a sex offender and that there were certain consequences of such a registration. The Petitioner is not entitled to relief on this issue.

## B. Ineffective Assistance of Counsel

The Petitioner alleges that he did not receive the effective assistance of counsel because: (1) Counsel did not explain to him that he could have to serve more than eight years; (2) Counsel did

not inform him that he would have to register as a sex offender; and (3) Counsel did not file a motion to withdraw the Petitioner's guilty plea.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the

defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). Additionally, in cases involving a guilty plea, a petitioner must establish that but for counsel's deficiency, he would have gone to trial instead of entering the plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### 1. Sentence Range

The Petitioner claims that he did not receive the effective assistance of counsel because Counsel did not inform him that he could be sentenced to serve more than eight years. The State counters that both Counsel and the trial court informed the Petitioner that he could be ordered to serve more than eight years.

The trial court found that Counsel informed the Petitioner and the Petitioner's family the sentence range of each of the four counts and the manner in which those sentences could be served. It wrote, "The Court finds that [Counsel] specifically informed the Petitioner and his family that he could receive consecutive sentencing and that he could receive more than eight years incarceration."

Our review yields that Counsel explained in detail the possible sentence range for each of the four counts to which the Petitioner pled guilty. Counsel also explained that the trial court might order the four individual sentences to be served concurrently or consecutively, and he provided the necessary definitions. Counsel even told the Petitioner that his sentence would be between eight and forty-eight years. This is adequate representation of the Petitioner by Counsel to inform him that his sentence may have been more than eight years. *See Baxter*, 523 S.W.2d at 936. We conclude that the Petitioner has not proven that Counsel was deficient with respect to this issue, thus, the Petitioner is not entitled to relief.

### 2. Sex Offender Registry

The Petitioner claims that he received the ineffective assistance of counsel because Counsel failed to inform him that he had to register as a sex offender. The State counters that Counsel informed the Petitioner that he had to register. The post-conviction court found that Counsel believed he informed the Petitioner about having to register and that the Petitioner failed to carry his burden otherwise.

On review, we conclude that the Petitioner has not proven that Counsel was deficient for failing to inform the Petitioner about the sex offender registry requirements. Counsel informed the Petitioner about the requirements of the plea, which included having to register as a sex offender. *See Baxter*, 523 S.W.2d at 936. Further, even if we were to conclude otherwise, the Petitioner has failed to prove prejudice. As previously stated, the trial court informed the Petitioner at the guilty plea about the requirement that he register with the sex offender registry, and the Petitioner indicated that he understood that requirement. He cannot show, therefore, that he would not have pled guilty if Counsel had informed him about the sex offender registration requirement. *See Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 59 . The Petitioner is not entitled to relief on this issue.

### 3. Motion to Withdraw Guilty Plea

The Petitioner argues that Counsel was ineffective for failing to file a motion to withdraw his guilty plea, which, he asserts, he asked Counsel to do. The State argues that, relying on the post-conviction court's findings of fact, the Petitioner never asked Counsel to withdraw the guilty plea. After considering this issue, the post-conviction court found that the Petitioner never asked Counsel to withdraw his guilty plea. It wrote that the Petitioner "provided insufficient evidence to substantiate his claim that he sought such a motion."

On review, we agree with the State. Relying on the post-conviction court's findings of fact, the Petitioner never asked Counsel to withdraw his guilty plea. As such, Counsel could not have been deficient for failing to file a motion to withdraw the guilty plea. *See House*, 44 S.W.3d at 515. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that the Petitioner's guilty plea was knowingly and voluntarily entered and that he did not receive the ineffective assistance of counsel. As such, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

11