IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2009

**TROY TACKETT v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court of Warren County**
**No. F-10387    Larry B. Stanley, Jr., Judge**

No. M2008-02075-CCA-R3-PC - Filed August 14, 2009

Pursuant to a plea agreement, the Petitioner, Troy Tackett, pled guilty to one count of rape of a child and two counts of aggravated sexual battery, and the trial court ordered him to serve twenty years in the Tennessee Department of Correction.  The Petitioner then filed a petition for post-conviction relief claiming that he received the ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered.  The post-conviction court denied relief after a hearing, and the Petitioner now appeals.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Philip Clemons, McMinnville, Tennessee, for the Petitioner, Troy Tackett.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clarence E. Lutz, Assistant Attorney General; Lisa Zavogiannis and Dale Potter, District Attorneys General for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**
**A.  Plea Hearing**

At the Petitioner's plea submission hearing, the State offered the following factual basis for the Petitioner's plea:

> On July 14, 2005[, the Petitioner] was caught in bed with a child.  He was engaged . . . with the child in intercourse or attempted intercourse at that point in time.  He was caught by the child's mother.  The mother witnessed the incident, asked [the

Petitioner] what was going on. She was shocked after observing it. After confronting [the Petitioner, the Petitioner] got up and fled the scene and left the State of Tennessee and . . . went to the State of Ohio . . . .

The Petitioner pled guilty to rape of a child and to two counts of aggravated sexual battery. In response to the trial court's inquiries, the Petitioner said he understood the facts the State would have to prove in order to convict him of the charges to which he pled guilty. The Petitioner confirmed he was satisfied by his trial counsel's services and that he was pleading guilty "freely and voluntarily." When the trial court asked whether was pleading guilty because he was guilty of the facts the State proffered, the Petitioner's trial counsel said

> Your Honor, we're going to enter a best interest plea. [The Petitioner] believes [the State's proof at trial] would be sufficient if the Jury believed the mother and the Jury believed the victim, that it's more than likely he would be convicted. His exposure was significant due to the nature of the crime and child rape and I think maybe three aggravated sexual batteries. I went over that with him, concurrent versus consecutive and these things and he would have a defense, his testimony, but he decided it would be in his best interest to take this plea offer.

The trial court then asked the Petitioner whether, essentially, his pleas were "no contest," and the Petitioner responded affirmatively.

Pursuant to the plea agreement, the trial court sentenced the Petitioner to twenty years for his rape of a child conviction and to ten years each for his two aggravated sexual battery convictions. The trial court ordered the sentences to be served concurrently, for a total effective sentence of twenty years.

## B. Post-Conviction Hearing

The Petitioner filed a timely petition for post-conviction relief, claiming he received the ineffective assistance of counsel, his conviction was based on a coerced confession, and his guilty plea was not knowingly and voluntarily entered. The post-conviction court appointed counsel for the Petitioner, and the Petitioner amended his petition to add the claim that his guilty plea to rape of a child lacked a factual basis. The post-conviction court held a hearing on this petition where the Petitioner and his trial counsel testified. The Petitioner testified his trial counsel failed to adequately confer with him prior to his guilty plea, that his guilty pleas were unknowingly and involuntarily entered because his trial counsel failed to provide the Petitioner with sufficient information and because his guilty plea to rape of a child lacked a factual basis.[1]

---

[1] We have omitted from these facts the testimony presented pertaining to allegations not pursued by the Petitioner on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

2

The Petitioner testified that the only time his trial counsel ("Counsel") visited him was one week before his plea date and that he did not receive any discovery materials before this visit. He said Counsel brought him the victim's mother's statement, but he never received any other item of the State's evidence against him. The Petitioner acknowledged that the statement alleged that he lay underneath the victim and fondled the victim on a bed and that both the Petitioner and the victim were unclothed. He testified that he understood that the victim's mother would probably testify to the contents of the statement, but he did not agree that he and the victim were unclothed. The Petitioner recalled that Counsel told him he could serve fifty-six years in jail if convicted of each crime with which he was charged. He was not sure whether Counsel explained the plea agreement and its consequences.

The Petitioner testified he did not want to take the plea agreement because he did not understand how the State could charge him while having so little evidence against him. Although the Petitioner said he would not have accepted the plea agreement if he had fully understood the agreement, he said that he understood the terms of the plea agreement. Petitioner said the single meeting with Counsel lasted ten minutes, and the next time he saw Counsel was a month later at his plea hearing. The Petitioner was very dissatisfied with Counsel's performance; he testified that "[T]he man didn't work for me. He wasn't trying to help me do [anything]. He didn't investigate [anything]. He didn't do [anything]."

On cross-examination, the Petitioner said he could not recall whether Counsel went over the plea agreement with him. Reviewing a copy of his plea agreement, the Petitioner confirmed the plea agreement listed the offenses to which he was pleading guilty, the possible sentences he would receive, and the collateral consequences of his child sex convictions. He also confirmed he signed the plea agreement. The Petitioner acknowledged that, during his plea submission hearing, the trial court verified that Counsel had explained the plea agreement to the Petitioner and that the Petitioner understood the charges to which he was pleading guilty, the evidence the State would have to present to convict him of each charge, and the possible sentences he could receive.

Deputy Sheriff Jason Rowland testified he worked as an investigator in Warren County's District Attorney's office when the Petitioner was charged with these crimes. Officer Rowland did not interview the victim because an independent agency specializing in child sex abuse victims interviewed the victim instead. The officer believed the agency made a videotape of the victim's interview. The officer did not interview the Petitioner because the Petitioner invoked his right to counsel when approached for an interview. Officer Rowland spoke with the victim's mother several times, and he believed he obtained a written statement from one of those conversations.

On cross-examination, Officer Rowland testified the victim's mother filed the initial complaint against the Petitioner, saying she witnessed the Petitioner, who was babysitting her daughter, have sexual contact with her daughter. The officer said evidence existed that the Petitioner tried to place his penis inside the victim during this contact. After the victim's mother filed her

complaint, the officer attempted to locate the Petitioner but found the Petitioner had fled the state. Officer Rowland testified that, of the child rape cases he had dealt with, he considered the case against the Petitioner particularly strong because of the eye-witness, the victim's mother.

Counsel testified he had practiced as a public defender since 1998, and he represented the Petitioner in 2005 when he was charged with the crimes underlying this appeal. Counsel recalled visiting the Petitioner "at least twice" while the Petitioner was in jail. Because his office files a Rule 16 motion for discovery "in every case," Counsel believed his office filed one in the Petitioner's case. He explained that the State typically offers a plea deal when it discloses the Rule 16 material and that he believed the State did so in the Petitioner's case. Counsel could not recall whether the victim's mother's statement was the only piece of evidence the State had against the Petitioner. Counsel said his office typically sends the State's discovery material to the defendant and later meets with the defendant to discuss the State's plea deal. He recalled that he visited the Petitioner in jail, explained the State's evidence to him, explained the State's plea deal, and answered the Petitioner's questions.

On cross-examination, Counsel elaborated that he had exclusively practiced criminal law since 1984. Given the high volume of cases he had dealt with in his career, he did not recall each issue of each case. Counsel did, however, recall that the Petitioner rejected the State's plea offer when he first visited the Petitioner. Because the Petitioner wanted to go to trial, Counsel arranged to meet with the Petitioner again to discuss their trial strategy. When Counsel arrived for this meeting, the Petitioner informed Counsel that he had spoken with his family and decided to accept the State's plea deal. Counsel described the Petitioner's change in position as "just like night and day." Counsel said he asked the Petitioner whether he was sure he wanted to accept the deal, and the Petitioner responded affirmatively. Reviewing a copy of the Petitioner's plea of guilty and waiver of rights, Counsel recalled that he went over the document with the Petitioner.

At the conclusion of the hearing, the post-conviction court concluded that the Petitioner's conviction for rape of a child did not lack a factual basis, that the Petitioner's guilty plea was knowingly and voluntarily entered, and that his trial counsel was effective. Accordingly, the court denied the petition for post-conviction relief and later issued a written order to that effect. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he is entitled to post-conviction relief because: (1) Counsel failed to provide the effective assistance of counsel; and (2) his guilty plea was not knowingly and voluntarily entered.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review,

4

this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State,* 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can only be overcome when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State,* 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

### A. Ineffective Assistance of Counsel

The Petitioner contends Counsel was ineffective because he visited with the Petitioner only once, a week before the Petitioner's trial date. The State responds that Counsel visited the Petitioner only once because the Petitioner accepted a plea deal before Counsel's investigation was fully underway, and, furthermore, that the Petitioner presented no proof of information withheld from the Petitioner that would have caused the Petitioner to reject the State's plea deal.

The post-conviction court found that, before the Petitioner accepted the State's plea offer, Counsel was preparing for trial. Noting that Petitioner failed to present proof that, had Counsel conducted further investigation, he would not have pled guilty, the post-conviction court denied post-conviction relief based on Counsel's performance.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded

of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for Counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner contends Counsel inadequately conferred with him before he pled guilty, meeting with him only once before his trial date. The post-conviction court rejected the Petitioner's claim of ineffective assistance, finding that, before the Petitioner accepted the State's plea deal, Counsel was preparing for the Petitioner's trial. Further, the post-conviction court found that the Petitioner presented no proof that, had Counsel acted differently, the outcome of his case would have been different. Indeed, Counsel testified that he met with the Petitioner at least twice, and the

6

Petitioner offered no proof of information Counsel withheld from him that would have prevented the Petitioner from pleading guilty. In our view, therefore, the record does not preponderate against the post-conviction court's findings. *See Fields*, 40 S.W.3d at 456-57. The Petitioner failed to demonstrate by clear and convincing evidence his contention that Counsel failed to adequately confer with him. *See* T.C.A. § 40-30-110(f).

We conclude therefore, that the Petitioner failed to demonstrate that Counsel's services fell outside the range of competence normally required of attorneys in criminal trials. *See Baxter*, 523 S.W.2d at 936. Moreover, the Petitioner does not offer any information withheld from him that would have induced him to reject the State's plea deal and, thus, fails to demonstrate how Counsel's conduct prejudiced him. *Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 59; *Walton*, 966 S.W.2d at 55. Having failed to demonstrate either prong of the *Strickland* standard, the Petitioner has not met his burden of showing he is entitled to post-conviction relief based upon Counsel's performance. *Id*. He is not entitled to relief on this issue.

### B. Involuntary & Unknowing Plea

The Petitioner contends his guilty plea was not knowingly and voluntarily entered because: (1) he was inadequately informed of the State's case against him before he pled guilty; and (2) his guilty plea to rape of a child lacked a factual basis. We address each contention in turn.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

"Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003) (citing *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998)). This Court reviews mixed questions of law and

fact de novo with a presumption of correctness "given only to the post-conviction court's findings of fact." *Id.* (citing *Fields*, 40 S.W.3d at 458).

### 1. Information Provided by Counsel

The Petitioner argues first that his guilty plea was involuntary and unknowing because Counsel failed to obtain the State's evidence against him before he advised the Petitioner to plead guilty. The State responds that the Petitioner received discovery materials before he pled guilty in spite of the fact that he pled guilty before either party's investigation was fully underway. The State also notes that the Petitioner failed to present any information that, had he possessed such information before he pled guilty, would have caused the Petitioner to reject the State's plea deal.

The post-conviction court rejected the Petitioner's claim that his guilty pleas were not knowingly and voluntarily entered, and it made several factual findings. The court found that the Petitioner was advised of the consequences of pleading guilty and that the Petitioner failed to present any evidence that his guilty plea was coerced. Indeed, our review of the record indicates that the Petitioner failed at his post-conviction hearing to present evidence of information that, had he possessed such information before he pled guilty, would have prevented his guilty plea. The Petitioner also failed to present any evidence that his guilty plea was coerced. Further, during his plea submission hearing, the trial court explained the Petitioner's charges and the consequences of pleading guilty, and the Petitioner informed the court he understood. The record, therefore, does not preponderate against the post-conviction court's factual findings. *See Fields*, 40 S.W.3d at 456-57.

After reviewing the totality of the circumstances, we agree with the post-conviction court that the Petitioner has failed to prove that his guilty pleas were not knowingly and voluntarily entered. The trial court clearly and accurately explained to the Petitioner the charges to which he was pleading guilty and the consequences of pleading guilty. The Petitioner indicated that he understood the court's explanation, and nothing in the record indicates the Petitioner did not, in fact, understand the charges he faced. Also, the Petitioner acknowledged that, before he pled guilty, he knew that the only evidence the State had against him was the victim's mother's statement. Moreover, the Petitioner offered no evidence of information discovered after he pled guilty that would have induced him to reject the plea deal. Therefore, the Petitioner fails to support his claim that the limited information he possessed about the evidence supporting his charges made his plea involuntary and unknowing. Further, the Petitioner presented no evidence that his guilty plea was the result of threats or coercion. *Blankenship*, 858 S.W.2d at 904. Under these circumstances, we conclude that the Petitioner's guilty pleas were knowingly and voluntarily entered. *See Turner*, 919 S.W.2d at 353. The Petitioner is not entitled to relief on this issue.

### 2. Factual Basis for Rape of a Child Guilty Plea

The Petitioner contends his guilty plea to rape of a child lacks a factual basis because no evidence that the Petitioner sexually penetrated the victim was presented at the Petitioner's plea submission hearing. As an additional consequence, he argues, his guilty plea to rape of a child was

not knowingly and voluntarily entered. The State, characterizing the Petitioner's contention as an objection to the sufficiency of his indictment for rape of a child, responds first that the Petitioner waived his objection to the sufficiency of his indictment when he pled guilty. The State contends also that, even if the Petitioner properly preserved this issue, the victim's mother's statement notified the Petitioner of a possible rape of a child charge. Because the Petitioner objects to his guilty plea and not his indictment, we will address the Petitioner's claim as an objection to the factual basis of his guilty plea and not as an objection to the sufficiency of his indictment.

At the conclusion of the Petitioner's post-conviction hearing, the post-conviction court rejected the Petitioner's claim that his guilty plea to rape of a child lacked a factual basis, finding that the Petitioner "knew very well what the statement of the victim's mother was and that she had seen him in the act of sexual activity and sexual intercourse with the minor child. That was not any surprise to the defendant." As we explain below, however, a claim that a petitioner's guilty plea lacked a factual basis is not properly brought in a petition for post-conviction relief.

Tennessee Rule of Criminal Procedure 11 outlines the warnings a trial court should issue a defendant seeking to enter a guilty plea, and it instructs the trial court to make several determinations about the guilty plea. Tenn. R. Crim. P. 11. One such determination the trial court must make is whether the guilty plea has a factual basis. Tenn. R. Crim. P. 11. The requirements of Rule 11, however, are based on statute rather than either the U.S. or State Constitutions. Further, this Court has previously determined that Rule 11's factual basis requirement exceeds the scope of *Boykin v. Alabama*, the U.S. Supreme Court case describing the U.S. Constitution's restrictions on guilty pleas. *Roger Steve Yant v. State*, No. M2007-01936-CCA-R3-PC, 2008 WL 5330459, at *8 (Tenn. Crim. App., at Nashville, Dec. 22, 2008) (citing *State v. Frazier*, 784 S.W.2d 927, 928 (Tenn. 1990), *perm. app. denied* (Tenn. May 11, 2009). The requirement that a factual basis accompany a guilty plea is not, therefore, a constitutional claim. *Id*. As such, a claim that a guilty plea lacks a factual basis is not properly raised in a post-conviction petition. *See* T.C.A. § 40-30-103. The Petitioner's claim that his guilty plea to rape of a child lacked a factual basis, therefore, is not cognizable in a post-conviction proceeding. *Id*. Accordingly, he is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Petitioner received the effective assistance of counsel and that the Petitioner's pleas were knowingly and voluntarily entered. Accordingly, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE