IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2011

## XAVIER TYRELL BARHAM v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 93345     Bob R. McGee, Judge**

_____

**No. E2011-00112-CCA-R3-PC - Filed December 21, 2011**

_____

The Petitioner, Xavier Tyrell Barham, pled guilty to three counts of possession of Schedule II controlled substance with intent to deliver, and the trial court sentenced him to an effective sixteen-year sentence. The Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed after a hearing. On appeal, the Petitioner contends that he received the ineffective assistance of counsel at trial and that his guilty pleas were not knowingly and voluntarily entered because he understood the plea agreement to be that all of his sentences would run concurrently for a total effective sentence of eight years rather than sixteen years. After a thorough review of the record and applicable authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER , delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Xavier Tyrell Barham.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Phillip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

In case number 88599, a Knox County grand jury charged the Petitioner in a two-count indictment for possession with intent to sell and possession with intent to deliver more than half a gram of cocaine within 1000 feet of a school, Class A felonies. In case 92397,

the grand jury returned a two-count presentment charging possession with intent to sell and possession with intent to deliver more than half a gram of cocaine, Class B felonies. In case number 92398, the grand jury also returned a two-count presentment charging the Petitioner with intent to sell and possession with intent to deliver more than twenty-six grams of cocaine, Class B felonies.

## A. Guilty Plea Hearing

During the hearing on a plea agreement encompassing all of the aforementioned charges, the parties stipulated the following as a factual basis for the pleas:

[T]his [Petitioner] on January 25th, 2007, about 2:00 in the afternoon appeared at West High School here in the City of Knoxville, Knox County. Blake Barham with the Knoxville Police Department was the school resource officer [who] encountered this [Petitioner] at that school. He was there to attempt to check out another student. A very strong odor of marijuana was observed coming from about his person. [T]he school security officer also encountered [the Petitioner] and he consented to search of his person.

During that search a baggy of crack rocks was found in a hat band that [the Petitioner] was wearing. [O]fficer Barham thereafter detained [the Petitioner] and mirandized him. During that subsequent interview, the [Petitioner] acknowledged having crack cocaine for the purpose of sale because he needed money.

Also during this encounter there was a search of [the Petitioner's] car in the school parking lot and an additional amount of crack cocaine was discovered inside the car. The field weight of the substance that tested positive for cocaine was approximately 20 grams, and it was later confirmed after sending to the TBI Lab for analysis.

. . . .

[O]n June 12th, 2009, about 9:30 in the morning officers from the U.S. Marshall's office and the Smoky Mountain Fugitive Task Force arrested [the Petitioner] on outstanding warrants for possession of crack cocaine over 50 grams.

In the attempt to arrest [the petitioner] he tried to run out the side door of the residence where he was located. He opened the door and saw police officers and ran back into the house. He was pursued and detained inside the

house. He was observed reaching into his shorts and discarding or attempting to discard an item. Officers recovered a plastic pill bottle containing field weight of 2.7 grams of crack cocaine. This was later forwarded to the laboratory and confirmed to be cocaine in an amount greater than half a gram.

. . . .

[O]n September 28th, 2007, . . . a cooperating individual placed a phone call to a male known only to him as Tyrell to attempt to purchase four ounces of crack cocaine. There was an agreed meeting place at the Super Wash House on Central Avenue . . . in Knox County. Police officers . . . with the Knoxville Police Department Repeat Offender's Unit monitored the transaction as it developed[.] [A]t about 6:30 p.m. [the Petitioner] arrived. He was stopped by officers of the police department. He was found to be in possession of four individually packaged baggies of substance that field tested positive for cocaine. The field weight at the time was 95 grams. And the cocaine was later sent to the [l]ab and confirmed to be cocaine base in the amount of 94.4 grams.

In case number 88599, the Petitioner pled guilty to the lesser included offense of possession of less than half a gram of a Schedule II controlled substance within 1000 feet of a public school, a Class B felony, and pled guilty to one count of each presentment in cases 92397 and 92398. The trial court sentenced him, in case number 88599, to serve eight years in the Tennessee Department of Correction. In cases 92397 and 92398, the trial court sentenced him to eight-year sentences to be served concurrent with each other and consecutive to his sentence in case number 88599, for a total effective sentence of sixteen years.

### B. Post-Conviction Hearing

The Petitioner filed a pro se petition for post-conviction relief on December 8, 2009, alleging that his guilty pleas were not knowingly and voluntarily entered because he did not understand the nature and consequences of his pleas. The post-conviction court appointed counsel who filed an amended petition for post-conviction relief on February 19, 2010. The post-conviction court held a hearing on the petition on January 6, 2011, during which the following evidence was presented:

The Petitioner testified that he did not have any trouble reading or writing but that he had received some assistance creating his pro se petition for post-conviction relief. He recalled that the trial court had appointed trial counsel ("Counsel") to represent him approximately two to three months before he pled guilty. During that time, Counsel visited

the Petitioner two or three times to discuss the case. He said the longest conversation that they had was approximately fifteen minutes long.

The Petitioner stated that Counsel did not explain his charges to him very well, and he thought he was pleading guilty to just the school zone drug charge. When he pled guilty, the Petitioner believed that the court was going to sentence him to an eight-year sentence and he would be eligible for probation. The Petitioner said that he did not discover that the court had sentenced him to sixteen years until he arrived at the penitentiary and received his time sheet. The Petitioner stated that if he had known that the court was going to sentence him to sixteen years, he would not have pled guilty and would have gone to trial.

On cross-examination, the Petitioner testified that he also had drug related federal charges for which Counsel represented him. The Petitioner remembered working extensively with Counsel on his federal case. If convicted, the Petitioner faced a possible ten-year sentence, day for day, in federal custody. The Petitioner recalled discussing with trial counsel that if he pled guilty to the state charges then the federal court would dismiss the federal charges.

The Petitioner testified that he knew that he was pleading guilty to three state charges but said he thought that the sentences for each case would run concurrently. Counsel advised him that he could apply for probation but did not promise the Petitioner that he would get probation. The Petitioner said that nothing affected his ability to understand what occurred at the plea hearing. He recalled that the agreement was for him to serve eight years, day for day, for the drugs in a school zone charge. The Petitioner thought that he could get probation despite having to serve the sentence day for day because he had "seen it done numerous times with people on the outside[.]" When the court announced his sentence, the Petitioner did not indicate to anyone that he had misunderstood the sentence. The Petitioner said that he did not recall hearing the judge say that his sentences in case numbers 92397 and 92398 were consecutive to his sentence in case number 88599. At the time of sentencing, the Petitioner knew what consecutive meant but said that he "could have sworn [he] heard concurrent, and that [he] would be serving . . . two eight [-] year sentences concurrent with each other . . . ."

Counsel testified that he visited the Petitioner at least five times to discuss the Petitioner's state and federal charges. When discussing the charges, Counsel separated his federal charges from the state charges. He stated that it was his practice to explain the federal exposure to his clients. Counsel told the Petitioner what his sentence would be if the state charged him. Counsel could not recall whether the state or federal sentence was more severe. The factual basis for the federal charge was the Petitioner's possession of drugs in a school zone, which was also the basis for his charges in case number 88599. The federal

-4-

court dismissed the charges against the Petitioner before he pled guilty in the state criminal court.

Counsel testified that his understanding of the Petitioner's sentence was that "the eight[-]year sentence would be day for day, one hundred percent. And the two other eight year sentences would run concurrently at 30 percent." He said that the agreement was that the two concurrent eight-year sentences would run consecutive to the eight-year, day for day, sentence. He explained this to the Petitioner and believed that the Petitioner understood his exposure in state court. Counsel stated that if the Petitioner had not understood his sentence, he would have never had the Petitioner accept the plea.

On cross-examination, Counsel testified that he recalled a "global agreement" that if the Petitioner "would plead guilty in state court to the three charges, and try to affect a ten[-]year sentence, as far as ten years of confinement time on state charges, that the federal charges would be dismissed." The Petitioner was facing a mandatory ten-year federal sentence, and Counsel and the prosecutor structured the agreement in the state court to get the equivalent of the federal sentence. Counsel discussed the agreement with the Petitioner before the plea hearing and on the day of the plea hearing. Trial counsel did not detect hesitance on the Petitioner's part about entering into the plea agreement. The Petitioner told the judge that he understood the plea agreement and what had occurred at the hearing. The Petitioner did not register any complaints regarding the process.

On redirect examination, Counsel testified that the Petitioner was facing a mandatory minimum sentence of ten years in the federal court, and the federal government wanted to ensure that the Petitioner received at least the mandatory minimum of ten years in the state court. Once trial counsel and the federal government calculated the Petitioner's sentence based on sentencing guidelines, the Petitioner was facing a sentence of ten years to life. In plea negotiations Counsel offered a ten-year, day for day, sentence, but the state rejected the offer.

On recross-examination, Counsel recalled that he and the prosecutor had discussed whether their sentencing the Petitioner for ten years in case number 88599 was legal because the drug free schools act required that the Petitioner serve the minimum within his range, which was eight years. Counsel further testified that they decided to sentence the other two cases to eight years at thirty percent, consecutive to case 88599, to ensure that the Petitioner would have a minimum ten-year sentence and avoid federal prosecution.

At the conclusion of the hearing, the post-conviction court concluded that the Petitioner's guilty plea was knowingly and voluntarily entered and that he received the effective assistance of counsel. The court denied the petition for post-conviction relief and

later issued a written order reflecting this denial. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he is entitled to post-conviction relief because: (1) he received the ineffective assistance of counsel; and (2) he did not knowingly and voluntarily enter his guilty pleas. The state responds that the Petitioner's claims are without merit, arguing that the Petitioner has failed to present clear and convincing evidence either that Counsel's performance was deficient or that his guilty pleas were anything less than knowingly and voluntarily entered.

To obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The Petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can only be overcome when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this court, with no presumption of correctness. *Id*. at 457.

### A. Ineffective Assistance of Counsel

The Petitioner contends that Counsel was ineffective because he advised the Petitioner that in return for his guilty plea, he would receive an eight-year, day for day, sentence in case number 88599 and that the other sentences would run concurrently to it for an effective eight-year sentence. The State responds that the evidence does not preponderate against the post-conviction court's finding that Counsel was effective. We agree with the State.

Both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution guarantee the right of a criminally accused to representation. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that trial counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or the services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). We should not deem that counsel was ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Here, the post-conviction court found that the Petitioner received effective assistance of counsel and that Counsel met with the Petitioner, explained the charges, counseled the Petitioner, and secured a beneficial plea agreement for the Petitioner. The post-conviction court accredited Counsel's testimony that he explained the Petitioner's sentence to him more than once. The evidence does not preponderate against the post-conviction court's findings. Counsel secured a beneficial plea deal for the Petitioner, explained the sentence to the petitioner, and believed he understood the sentence. The Petitioner never told trial counsel or the court that the sentence declared by the court was not the eight-year one to which he allegedly had agreed. Moreover, Counsel stated that he would not have allowed the Petitioner to plead guilty if he knew that the petitioner did not understand the plea. Thus, we conclude that the Petitioner failed to show that trial counsel's services fell outside the range of competence normally required of attorneys in criminal trials. *See Baxter*, 523 S.W.2d at 936. Having failed to show the first prong of the *Strickland* standard, the Petitioner has not met his burden of showing that he is entitled to post-conviction relief based upon trial counsel's performance. *Id*. He is not entitled to relief on this issue.

## B. Involuntary & Unknowing Plea

The Petitioner contends that he did not knowingly plead guilty because he believed that he was pleading guilty to an effective eight-year sentence, and he would have rejected the plea deal if he understood it was for an effective sixteen-year sentence. The State responds that, because the court and Counsel repeatedly informed the Petitioner that two of the sentences would run consecutively, his plea was knowing.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id*.

"Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003) (citing *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998)). This Court reviews mixed questions of law and fact *de novo* with a presumption of correctness "given only to the post[-]conviction court's findings of fact." *Id*. (citing *Fields*, 40 S.W.3d at 458).

The post-conviction court found that trial counsel explained the Petitioner's sentence to him at the detention center and before the plea hearing. Moreover, the post-conviction court found that the trial court explained the Petitioner's sentence "very carefully during the sentencing hearing, and that [the Petitioner] was present, and that his rights were explained to him fully, and he indicated that he understood each of these rights, including his right to got to trial if he chose to." The court further found that during the plea hearing, the Petitioner never objected or suggested any confusion about his sentence. Likewise, when the court asked the Petitioner if he had anything to say after it pronounced its sentence, the Petitioner said that he did not have anything to say. During the hearing, the Petitioner never indicated confusion, hesitation, or a lack of understanding about what had occurred. The record and the evidence do not preponderate against the findings of the post-conviction court. Accordingly, we conclude that the Petitioner's guilty pleas were knowing and voluntary, and the Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Petitioner received the effective assistance of counsel, and that the Petitioner knowingly and voluntarily entered his pleas. Accordingly, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE