IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 27, 2012 at Knoxville

**JEFFREY MARTIN v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Maury County**
**Nos. 15294, 16817    Jim T. Hamilton, Judge**

_____

**No. M2011-02622-CCA-R3-PC-Filed January 15, 2013**

_____

The Petitioner, Jeffrey Martin, entered a best-interest guilty plea in two cases. In one case, he pled guilty to statutory rape in exchange for a suspended two-year sentence. In the second case, the Petitioner pled guilty to the sale of .5 grams or more of cocaine, and he received a sentence of twenty years in prison as a Range II, multiple offender. The trial judge ordered that the sentences run concurrently, and it ordered that the sentences run concurrently with all other Maury County convictions. On appeal, the Petitioner contends that he received the ineffective assistance of counsel, causing his guilty pleas to be entered unknowingly and involuntarily. The Petitioner also argues that the post-conviction court erred when it required him to testify at the post-conviction hearing about the underlying facts of his convictions. After a thorough review of the record and relevant authorities, we conclude that the Petitioner did not establish that he received the ineffective assistance of counsel, that his guilty pleas were knowingly and voluntarily entered, and that the post-conviction court did not err in requiring the Petitioner's testimony. Accordingly, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Michael D. Cox, Columbia, Tennessee, for the appellant, Jeffrey Martin.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Mike T. Bottoms, District Attorney General, and Brent A. Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts

### A. Guilty Plea Hearing

On March 16, 2005, a Maury County grand jury indicted the Petitioner for contributing to the delinquency of a minor, solicitation of a minor, and statutory rape. On January 17, 2007, a Maury County grand jury indicted the Petitioner for selling a Schedule II controlled substance in the amount of .5 grams or more, a Class B felony.

On January 26, 2010, the trial date for the Petitioner's felony drug case, the Petitioner's attorney ("Counsel") presented the procedural history of the case to the trial court and made a motion for a continuance, explaining that more time was needed "to get [a] witness under subpoena and brought in here for trial." Counsel gave further background regarding the need for a continuance, stating that "[t]here's a video that's involved in this case," explaining that the video involves "a [Confidential Informant] transaction." Counsel stated that two men, a black male and a white male, appear in the video. Per a request from the Petitioner, Counsel attempted to subpoena the men to testify at trial for the Petitioner's felony drug case. Counsel located one of the witnesses in the custody of the Tennessee Department of Correction ("TDOC") and had him transported to testify at trial. Counsel, however, stated that he spoke with that witness prior to trial and determined that the witness's testimony would not be helpful.

Counsel stated that he could not locate the second witness. He stated that the Petitioner gave him the second witness's name and a location of that witness's last known residence in Maury County, but, after a record check at the courthouse, Counsel could not "find anything on him." Counsel stated that he "was unable to find" the witness, and "the purpose of having [the witness] for trial would be to hope that he would be able to testify about a third party who is not seen in the room [in the video] but could have been seen by [that witness's] advantage [sic] point to the other part of the house." Counsel then stated that he took "a large part of responsibility for this request [for a continuance]." Counsel said that "had [he] gone to see [the Petitioner] sooner, [he] could have certainly put in more efforts maybe to have found this person . . . on the information that [he] had at the time."

The trial court then allowed further discussion on how the Petitioner and Counsel planned to locate the second witness. After such discussion, the trial court ruled as follows:

THE COURT:. . . I'm not gonna grant your Motion for Continuance. This case has been here forever. This is about the second or third time we've gotten to this point in it. And, all of a sudden, we have a missing witness. So I'm

2

gonna deny your Motion for Continuance. However, I will say this, we'll get a subpoena issued right now. We'll get it in the hands of as many police officers as we can to go and see if they can find this [witness].

After the trial court denied his motion for continuance, Counsel stated that he had been working on a plea agreement with the State and that he had reviewed the agreement with the Petitioner. Counsel then stated that the Petitioner wished to proceed with the State's plea offer.

At that time, the trial court placed the Petitioner under oath and conducted a plea colloquy with the Petitioner. The Petitioner affirmed that he was in "good physical and mental health." The Petitioner stated that he was not addicted to crack cocaine or methamphetamine, and he stated that he was not under the influence of any drugs or alcohol. The Petitioner affirmed that he and Counsel "negotiated this plea" and that he had in fact "been talking [with Counsel] about this plea for about two hours this morning." The trial court then reviewed the terms of the plea agreement with the Petitioner, which included the charge for the sale of cocaine and charges from another pending case that included statutory rape. The charges for solicitation of a minor and contributing to the delinquency of a minor were ultimately dismissed. The Petitioner affirmed that he understood that he was entering a best interest plea of guilty in each case and that he and Counsel discussed the plea agreement "in great detail." The Petitioner agreed that, regarding the statutory rape charge, he had decided to enter a plea of guilty and receive a suspended two-year sentence, to be served on unsupervised probation. Regarding the charge for sale of cocaine, the Petitioner acknowledged that the plea agreement required that he receive a twenty-year sentence as a Range II offender, receive a $3000 fine, and that the twenty-year sentence run concurrently to his other Maury County convictions. The Petitioner again affirmed that he and Counsel "reached this agreement after [] rather lengthy negotiations between [he and Counsel] and the District Attorney's Office."

The trial court then explained the Petitioner's constitutional rights and the consequences of the waiver of those rights associated with the entry of a guilty plea. When the trial court gave the Petitioner an opportunity to make a statement on the record about his pleas, the Petitioner responded, "I ain't got nothing to say." Counsel stipulated that, for both cases, there was a factual basis for the best interest pleas. The Petitioner agreed that he entered the pleas freely and voluntarily and that Counsel explained the terms of the plea agreement to him.

The trial court found that the Petitioner was freely and voluntarily entering his best interest pleas of guilty for both the statutory rape case and the felony drug case, and the trial court accepted the Petitioner's guilty pleas. The trial court sentenced the Petitioner to an

agreed sentence of two years for the statutory rape conviction, to be suspended and served under unsupervised probation, and twenty years as a Range II offender for the sale of cocaine conviction, to be served concurrently with all of the Petitioner's other Maury County convictions.

## B. Hearing on Motion to Withdraw Guilty Plea

The Petitioner filed a motion to withdraw his guilty plea, on February 22, 2010, in the statutory rape case. The Petitioner testified that he wanted to withdraw his guilty plea because he "pleaded to a charge to something I didn't have nothing to do with . . . ." The Petitioner continued, " At the time, man, my mind was on so much stuff, you know. I really didn't know what I was doing. I didn't even want to waive my rights to a jury trial." When asked by the State, however, the Petitioner admitted that he understood the plea agreement, stating that he "knew what y'all were trying to offer me."

The following dialog took place between the State and the Petitioner:

| GENERAL COOPER: | But you took the deal on the statutory rape because you knew it got you the deal on the cocaine charge, right? You made that decision, right? |
|---|---|
| [PETITIONER]: | Well, it was a lot of other people involved that made [me] make a deal. |
| GENERAL COOPER: | But the decision to do it was yours, right? |
| [PETITIONER]: | Yeah. |
| GENERAL COOPER: | You remember when we took the plea, don't you? We had jurors in the building waiting. |
| [PETITIONER]: | Yeah. |
| GENERAL COOPER: | If you backed out of your plea, which you could have done, because you had every right to have a trial in front of the jurors on that cocaine charge. |
| [PETITIONER]: | Yeah. |

4

GENERAL COOPER:     You knew that any minute you could say, let's stop right here, I want a trial, we would have brought those people in here and gone to trial. You knew that, didn't you?

[PETITIONER]:       Yeah.  Can I say something?

GENERAL COOPER:     No.  But you knew that you had a shot at [a] for sure thing, 20 years concurrent, right?

[PETITIONER]:       Yeah.

GENERAL COOPER:     And you, being a grown man, an intelligent person, was smart enough to take that deal before the opportunity was gone, right?

[PETITIONER]:       (No response.)

GENERAL COOPER:     That's what you did, right?

[PETITIONER]:       Yeah, I took the deal.

After listening to the Petitioner's argument, the trial court denied the Petitioner's motion.  In its oral ruling, the trial court stated that it "wouldn't allow [the Petitioner] to enter a plea [of] guilty to the charges contained in this agreement if [the Petitioner] claimed to be innocent of those charges."

## C. Post-Conviction Hearing

At the outset of the hearing, the Petitioner's appointed attorney for his post-conviction appeal, stated the following:

[The Petitioner] has filed this petition for Post-Conviction Relief, alleging that he received ineffective assistance of counsel, and is asking the Court to set aside those guilty pleas and set those cases back on the Court's regular docket.

. . . .

So, as I have advised [the Petitioner], he could be looking at the

5

possibility that, if found guilty in the future, in a jury trial of both of these two cases, that he could be looking at consecutive sentencing for these two cases, which would . . . [be] a much longer sentence because of the consecutive sentencing.

The Petitioner testified that, after a jury found him guilty on a separate case, he relieved his first trial attorney and Counsel was ultimately appointed to represent him in his felony drug case. The Petitioner stated that he only had one "face-to-face" meeting with Counsel regarding his felony drug charge, which was on "the Friday before [the] trial date that Monday." The Petitioner testified that, at the meeting with Counsel, he informed Counsel about three witnesses that he wanted subpoenaed to testify at his trial. He stated that Counsel was not able to obtain the appearances of all the witnesses at his trial. The Petitioner stated that he wanted the witnesses to testify because "they was gonna say - get to tell the truth." The Petitioner agreed that a videotape of the drug exchange existed and that he was on the videotape. The Petitioner continued, "Yeah, that was me on the tape, but that was not me selling that CI no drugs."

The Petitioner affirmed that, on the day of trial for the felony drug charge, he and Counsel discussed a possible settlement of the two pending cases against the Petitioner, the felony drug case and the statutory rape case. The Petitioner, however, claimed that Counsel did not discuss the range of punishment that he would face if the Petitioner went to trial. The Petitioner also denied that Counsel discussed with him the evidence against him for the felony drug charge. The Petitioner acknowledged that Counsel obtained the presence of one of the three witnesses he requested. The Petitioner asked Counsel to obtain a continuance of his trial, but Counsel was unable to get the trial continued. The Petitioner stated that he accepted the plea agreement proposal because he "didn't have no other choice." The Petitioner explained that he accepted the plea agreement because Counsel "didn't have my trial prepared for me to go to trial. And the Judge wouldn't give me no continuance for him to prepare a trial or prepare my witnesses, so I didn't have no other choice."

The Petitioner acknowledged that the guilty plea hearing transcript demonstrated that the trial court had given the Petitioner the opportunity to speak on the record about the representation he received from Counsel. The Petitioner agreed that he did not say anything at the time. The Petitioner, however, claimed that he did not say anything at the hearing because he was coerced into taking the plea. The Petitioner stated that Counsel told him to "take the plea, come back later, file the post-conviction, and the statutory rape case would get dismissed." The Petitioner stated that Counsel told him that the plea agreement required the Petitioner to plead guilty to both the cocaine and statutory rape charges.

The Petitioner stated that he did not receive discovery in the felony drug case from

6

Counsel. The Petitioner, however, reviewed the videotape at issue in the felony drug case with Counsel when he visited with the Petitioner. The Petitioner also claimed that Counsel did not review the police reports with him. The Petitioner agreed that his main complaint against Counsel was his "failure to discuss [the] case" and his "inability to communicate" with Counsel about the case.

On cross-examination, the Petitioner acknowledged that, even if the cases at issue in his petition get dismissed, he would not serve any less time in prison, and he could possibly receive more time if convicted at trial.

The post-conviction court granted a recess in the proceeding for the Petitioner to review a copy of his guilty plea transcript. After reviewing the transcript, the Petitioner stated that "the Best Interest plea . . . [is] the thing I seen that was in the transcript that was incorrect, because I didn't know nothing about no Best Interest plea." The Petitioner denied knowing any information about that type of plea or that Counsel had explained it to him. The Petitioner agreed that the plea petition had his name, case numbers, and signature on it, but he maintained that it had never been read or explained to him. The Petitioner stated, "I was just asked to sign it right there." The Petitioner said that he heard the trial court state that he was "pleading to a Best Interest Plea." The Petitioner stated that he "later" asked Counsel the meaning of a best interest plea.

The Petitioner confirmed that he entered a plea, but he stated that he was not guilty of the offenses. The State explained the meaning of a best interest plea to the Petitioner, stating that "in a Best Interest Plea, you don't admit that you're guilty." The Petitioner then agreed that he understood the meaning of a best interest plea and admitted that the only type of plea he would have entered would have been a best interest plea. The Petitioner denied that he was guilty of either statutory rape or selling cocaine and stated that he would not have entered guilty pleas to those offenses. The Petitioner further denied that he accepted the plea to avoid going to trial. The Petitioner said that he "did it because [Counsel] coerced me by saying, [i]f you go ahead and take this plea with this cocaine charge, you can go later and file a post-conviction to overturn the statutory [rape] case." The Petitioner claimed that he "was ready to go to trial."

The Petitioner denied lying during the guilty plea hearing when he told the trial court that he accepted the plea freely and voluntarily. The Petitioner maintained, however, that he did not accept the plea freely and voluntarily because Counsel coerced him into taking the plea. The Petitioner claimed that Counsel's coercion "wasn't on the record. It was downstairs, on the first floor, where [we] we're at then." The Petitioner denied that he was satisfied with Counsel's performance on his case.

The Petitioner admitted that he appeared in the videotaped recording of the cocaine transaction and that it showed him talking with the CI. The Petitioner, however, denied that the video footage showed him selling the CI any drugs. The Petitioner explained that the three people he wanted Counsel to subpoena to testify at trial could be seen in the videotape. He thought that the witnesses would "tell the truth . . . that the CI that's trying to purchase the drugs from [the Petitioner], it didn't come from [the Petitioner]."

Counsel testified that he has practiced law for eighteen or nineteen years, doing "strictly criminal defense" work for most of those years. Counsel stated that he has done between approximately seventy and one hundred criminal jury trials in his career. Through the years, Counsel had represented "hundreds" of defendants in cases involving felony drug offenses.

Counsel recalled the events prior to the Petitioner's plea. He stated that he and the Petitioner "had a defense" in the felony drug case, and the pending charges for statutory rape were not his "main focus at all" because that case was not set for trial. The Petitioner insisted to Counsel that he was not guilty of statutory rape, and he was not interested in settling those charges. Counsel stated that, although he was not positive because he "came in late in the game," there "seem[ed] to be some sort of a hard line drawn between the D.A.'s Office and [the Petitioner] with respect to those sex cases." Counsel testified that he did not remember how the conversation started, but Counsel and the State "got on the conversation of . . . a global settlement" for all of the Petitioner's cases. Counsel testified that he spoke with the Petitioner "for a couple of hours about potentially settling everything." Counsel stated that, after negotiating with the State and discussing possible agreements with the Petitioner, "we actually, at some point, had gotten through the plea paperwork to the idea that [the Petitioner] was gonna take a global settlement." The Petitioner, however, rejected the agreement. At that point, Counsel "put it to the side" and prepared to commence the trial.

Counsel testified that there was "an issue . . . with a witness missing," so he made a motion to continue, but the trial court denied that motion. Counsel stated that he prepared to present the case at trial, and, as he stood at the podium in the courtroom, the Petitioner "tugged" on his right coattail and told Counsel that he had decided to accept the plea agreement. At that point, Counsel told the trial court that the Petitioner wanted to settle his cases. Counsel indicated to the trial court that he had already reviewed the plea agreement paperwork with the Petitioner and that the trial court could proceed with the plea. Counsel denied telling the Petitioner that his only option was to take the plea agreement. Counsel testified that he has "never told any client that, and never would, and never will" because "[t]hat is absolutely not my decision to make." Counsel stated, however, that he would tell a client his opinion about a possible agreement.

Counsel testified that, "based on the defense we had," he was prepared to try the case. Counsel explained that, although one of the witnesses was missing, "we were still gonna be able to present our defense without him." Counsel confirmed that the other witness was in court on the day of trial, but Counsel believed his testimony would not have been useful. Counsel noted that the Petitioner mentioned a third witness during his testimony, but Counsel recalled that they discussed calling only two of the men as trial witnesses. Counsel stated that they never intended on calling the third man as a trial witness.

Counsel testified that he viewed the videotaped recording of the drug transaction in the Petitioner's felony drug case "several times." He opined that the quality of both the video and the audio was "pretty solid" and contained "bad evidence for the defense."

Counsel identified the plea petition, stated that it accurately reflected the plea agreement, and testified that he reviewed it with the Petitioner. He stated that, to ensure that he goes through an entire petition with a client, he made notations on the petition as he reviewed each section with his client. On the plea petition in the Petitioner's case, he indicated his markings on the petition, which reflected that he reviewed every section of the plea petition with the Petitioner. Counsel testified that he "read it out loud to [the Petitioner], word for word, and explained what it meant, and then [said], you understand? He acknowledge[d], I really understand something, then check it off." Counsel stated that the Petitioner's claim that he did not review the petition or explain the plea agreement "would not be correct by that document[] or what I've done with every client that I've ever filed a petition with." Counsel testified that he believed the plea agreement was in the Petitioner's best interest because it "add[ed] no time" and eliminated the risk of consecutive sentencing. He believed that the Petitioner "understood what was going on. I don't think [the Petitioner] liked what was going on, but I think he understood it very well."

Counsel testified that the Petitioner was "very involved" in the case and asked Counsel several questions. Counsel, however, did not believe that he coerced the Petitioner into accepting the plea. Counsel testified that he did not advise the Petitioner to plead guilty and "then turn around tomorrow and file a post-conviction relief petition." He stated that "[t]hat kind of advice never came out of my mouth and never would." Counsel stated that the only context in which he would have discussed post-conviction relief is if the Petitioner had questioned appeal options. Counsel said that, if that would have happened, he would have told the Petitioner that he could file a petition for post-conviction relief. He concluded, however, "that would have to be in context with that sort of question." Counsel reiterated that he would "never give the advice of plead guilty then turn around and file a post-conviction, and then work on the statutory rape. I don't see that ever coming out of my mouth."

9

On cross-examination, Counsel affirmed that, at the hearing on the Petitioner's pro se motion to withdraw his guilty plea, he told the trial court that he could no longer represent the Petitioner. Counsel agreed that, at some point, he "possibly" discussed the process for a post-conviction petition with the Petitioner. In addressing the context for a possible conversation with the Petitioner about post-conviction relief, Counsel clarified that "[m]y point was, I don't think we had that type conversation . . . when we were getting ready to talk about settling the case and going up to do the plea."

Counsel stated that he "inherited" the Petitioner's case from a local attorney, and that the former attorney told Counsel that he had already reviewed discovery for the case with the Petitioner. When Counsel visited the Petitioner on the Thursday before the Petitioner's trial date, he "went out there with the ability to go over [the case], and the intention to go over that video disk with him." When Counsel told the Petitioner that he had the videotape, the Petitioner told Counsel that he had "seen that thing before. We don't need to go over that. We don't need to look at that." Counsel stated that, at the meeting, they discussed the Petitioner's other cases as well as his felony drug case. Counsel agreed that the Petitioner had told him about two or three witnesses, but Counsel was only able to secure the presence of one of the witnesses for trial. Counsel stated that because he met with the Petitioner shortly before the trial, he was not able to secure the appearances of all the witnesses. Counsel testified that it would have been easier to find the witnesses had he "been there 30 days earlier, . . . part of it is, the witnesses were kind of a surprise to me." Regarding one of the witnesses that Counsel did not find, Counsel stated that, based on their defense, "[h]aving this witness or not having this witness, for the limited purpose that he was gonna be there, was not gonna change the trial strategy." He, however, admitted that having all the witnesses "could have potentially . . . been something more that I could have argued to the jury to help the defense case."

Counsel testified that he was prepared to take the Petitioner's felony drug case to trial. He explained that he did not focus on the "sex cases" because they were "[n]ot set for trial" and not because they were "less serious." Counsel did not think that his lack of preparation on the cases involving sexual offenses affected his ability to advise the Petitioner about the best interest plea. Counsel agreed that the District Attorney's Office said that, if there was a settlement, it would have to include all of the Petitioner's cases.

Counsel stated that, typically, he would not send a response to every letter sent to him by a client. Counsel testified that he would only respond when he "fel[t] the need to respond." Counsel did not recall that the Petitioner sent him several letters. Counsel stated, "I think it could very easily be that [the Petitioner's] writing to me 3 or 4 times, and I may not respond to him. That's very possible. And until I can let him know something or something's going on, that would be typical."

10

After the arguments, the post-conviction court orally denied the Petitioner's petition for post-conviction relief because he did not "carr[y] the burden that's required for the Court to be able to grant . . . one of these petitions of this nature." After its ruling, the post-conviction court made the following observations:

> These pleas that [Counsel] worked out for you didn't add one day to your prison time. Think about that, not one day. It got rid of all your cases. It was a concurrent plea. Everything else was nolle, dismissed. You say you didn't completely understand it. You had the benefit of a 20-year defense attorney . . . He's explained in detail about this plea to you. You had me, the Circuit Judge, I've been on the bench about 30 years. I explained it to you to be sure. . . .
>
> . . . .
>
> . . . This is one of the best pleas, I believe, I've ever seen in a case such as this. This wipes away all of your cases. It doesn't add one day to your prison term. And yet, . . . [y]ou're asking me to set all this aside, and let you go to trial to those cases, one by one, with each sentence you're getting to serve consecutive to the one you just finished. You never would get out of jail. So having said that, and listen[ing] to the proof today, the Court's gonna overrule your motion, your petition for post-conviction relief.

The post-conviction court later issued a written order denying the petition for post-conviction relief. It is from this judgement that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel, causing his guilty pleas to be involuntary. The Petitioner also argues that the post-conviction court erred in requiring him to testify at the post-conviction hearing, through cross-examination, about the underlying facts of his convictions. The State responds that, regarding the argument for ineffective assistance of counsel, the Petitioner has not proven deficient performance or prejudice. Further, the State argues that it was not improper for the post-conviction court to allow cross-examination about the underlying facts of the Petitioner's convictions. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations

11

in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

## A. Ineffective Assistance of Counsel

The Petitioner specifically argues that Counsel failed to conduct an adequate investigation of his case and failed to adequately communicate with the Petitioner. As a result, the Petitioner argues that, due to Counsel's ineffectiveness, he did not voluntarily or freely enter his guilty plea.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of

12

competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When evaluating the knowing and voluntary nature of a guilty plea, the United States

13

Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn.1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

"Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003) (citing *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998)). This Court reviews mixed questions of law and fact *de novo* with a presumption of correctness "given only to the post [] conviction court's findings of fact." *Id.* (citing *Fields*, 40 S.W.3d at 458).

First, the Petitioner asserts that Counsel failed to adequately investigate his cases. In its order, the post-conviction court found that the Petitioner failed to demonstrate by clear and convincing evidence that the Petitioner was denied the effective assistance of counsel. The post-conviction court found Counsel's testimony credible, specifically, that Counsel was "completely prepared" to try the Petitioner's felony drug case and that he "had a defense prepared that was unaffected by the failure to subpoena the witnesses [the Petitioner] wanted."

We conclude that the evidence presented at the post-conviction hearing supports the post-conviction court's finding. Counsel "inherited" the Petitioner's case from another attorney, Counsel testified that he had spoken with the Petitioner's former counsel, and he was satisfied that the Petitioner was aware of and had reviewed the discovery in his case. The record supports that Counsel met with the Petitioner prior to trial to discuss the case. When Counsel informed the Petitioner about the videotape recording of the Petitioner selling cocaine to a CI, which was a key piece of evidence in the felony drug case, the Petitioner told

14

Counsel that he had "seen that thing before" and did not wish to view it again. Counsel testified that, based on the facts and evidence, he was prepared to try the case. Counsel's performance was not deficient in this respect.

Second, the Petitioner argues that Counsel failed to communicate with him, specifically referencing Counsel's failure to secure witnesses to testify at trial. The post-conviction court found that "there is no proof in the record that these witnesses were willing to testify or that their testimony would have aided the [Petitioner] in any way." Therefore, the post-conviction court noted that Counsel "could only speculate as to what they would say."

Regarding Counsel's communication with the Petitioner, Counsel testified that, although he would not typically send a response to every letter sent to him by the Petitioner, he would respond when he "fel[t] the need to respond." The record does not support the Petitioner's argument that, had Counsel communicated with him more or had more face-to-face meetings with him, Counsel would have been able to satisfy the Petitioner's request to secure witnesses to testify at trial. Counsel testified that it came as a "surprise" to him that the Petitioner requested, at their pretrial meeting, that Counsel subpoena two or three men who were present at the drug transaction to testify as trial witnesses. Counsel did, however, state that it would have been easier to find the witnesses had he "been there 30 days earlier." Nonetheless, even with such late notice, Counsel secured one of the witnesses to testify at trial and had him transferred to the courthouse on the morning of the scheduled trial. Counsel testified that, although he secured the witness's appearance for trial, the witness's testimony was not useful. Counsel explained that, although one of the witnesses was missing, "we were still gonna be able to present our defense without him." In his testimony, the Petitioner did not detail how testimony from the witnesses would aid his defense nor did he present the witnesses at the post-conviction hearing. The Petitioner only stated that he thought that the witnesses would "tell the truth . . . that the CI that's trying to purchase the drugs from [the Petitioner], it didn't come from [the Petitioner]." It is well established that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

A petitioner is not entitled to relief on this issue unless he can produce a material witness who "(a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*." *Black*, 794 S.W.2d at 758. Counsel in this case attempted to locate the witnesses and secured the appearance of one witness. After interviewing that witness, Counsel determined that his testimony would not benefit the Petitioner at trial. Therefore, we conclude that the post-

15

conviction court correctly found that no proof existed to demonstrate that the testimony of the witnesses would have aided the Petitioner at trial, and Counsel could only "speculate as to what [the witnesses] would say." As a result, the Petitioner has failed to establish that Counsel was ineffective in this respect and that he was prejudiced due to Counsel's conduct. Thus, the Petitioner is not entitled to relief as to this issue.

Based on the conclusions above, the Petitioner was not denied the effective assistance of counsel, and he voluntarily and freely entered his guilty plea. The post-conviction court accredited Counsel's testimony that he reviewed the plea with the Petitioner, finding that Counsel explained the plea agreement "in detail" to the Petitioner. Additionally, the post-conviction court noted that it had discussed the content of the plea agreement with the Petitioner, stating that "[y]ou had me, the Circuit Judge, I've been on the bench about 30 years. I explained it to you to be sure. . . ." In its order, the post-conviction court concluded that the Petitioner "entered said pleas knowingly and voluntarily and without any coercion from [Counsel]." The post-conviction court continued, "[Counsel] testified, and the Petition to Enter Guilty Plea supports his testimony, he reviewed every paragraph of the Petition to Enter a Guilty Plea with [the Petitioner] before [the Petitioner] signed the form." The post-conviction court found that it "does not believe that [Counsel] would ever coerce a client into taking a plea offered from the State and does not believe that he coerced [the Petitioner] into taking this deal."

Therefore, in summary, the evidence does not preponderate against the post-conviction court's conclusion that the Petitioner's plea was knowingly and voluntarily entered. As pointed out by the post-conviction court, the Petitioner was represented by competent and experienced counsel. The record shows that Counsel thoroughly reviewed the plea agreement with the Petitioner, marking off each section on his copy of the agreement after he explained it to the Petitioner. Further, during the guilty plea submission hearing, the trial court reviewed the terms of the plea agreement with the Petitioner, and the Petitioner affirmed that he understood that he was entering a best interest plea of guilty in each case against him. The Petitioner further affirmed that he and Counsel discussed the plea agreement "in great detail." Also, as pointed out by Counsel, the plea agreement was favorable to the Petitioner as it "add[ed] no time" to the sentences the Petitioner was already serving and eliminated the risk of consecutive sentencing. Lastly, the State's evidence against the Petitioner in the felony drug case was strong, involving a videotape recording of the Petitioner selling cocaine to a CI. At the post-conviction hearing, although he denied selling drugs to the CI, the Petitioner admitted that he appeared in the videotape of the cocaine transaction and that it showed him talking with the CI. Counsel testified that the video would have supported the State's argument in the case because "[t]he video was bad evidence for the defense." Therefore, we affirm the decision of the post-conviction court, and the Petitioner is not entitled to relief as to this issue.

**B. Petitioner's Testimony at the Post-Conviction Hearing**

The Petitioner also argues that the post-conviction court erred in requiring him to testify about the underlying facts of his convictions at the post-conviction hearing. Specifically, citing Tennessee Supreme Court Rule 28, section 8(C)(1)(d), the Petitioner claims that the post-conviction court improperly allowed him to be cross-examined about the facts of his convictions. The State argues that it was not inappropriate for the post-conviction court to allow questioning. We agree with the State.

The Tennessee Rules of Post-Conviction Procedure state the following: "Under no circumstances shall petitioner be required to testify regarding the facts of the conviction which the petition attacks unless necessary to establish the allegations of the petition or necessary to the state's attempt to rebut the allegations of the petition." Tenn. Sup. Ct. R. 28, section 8(C)(1)(d) (discussing post-conviction procedure).

As one of the claims in the Petitioner's petition for post-conviction relief, the Petitioner argued that he was prejudiced from Counsel's failure to secure the appearance of witnesses to testify at trial. The Petitioner explained that he wanted those witnesses to testify because they were present at the drug transaction at issue in the case and appeared in the videotaped recording of the occurrence. The Petitioner testified that he thought that the witnesses would "tell the truth . . . that the CI that's trying to purchase the drugs from [the Petitioner], it didn't come from [the Petitioner]." The witnesses, however, did not appear to testify at the post-conviction hearing. Therefore, the post-conviction court allowed the Petitioner to be questioned about the facts the Petitioner believed the witnesses would have testified to at trial. Specifically, the post-conviction court allowed him to testify as to the content of the videotape, the position of each of the witnesses in the videotape, and why the testimony of the witnesses would be relevant to the case.

We conclude that the post-conviction court did not err, because the testimony was "necessary to establish the allegations of the petition." The post-conviction court correctly allowed the testimony in order to support the Petitioner's allegations that he suffered prejudice from Counsel's failure to secure witnesses to testify at trial. Therefore, this issue is without merit, and the Petitioner is not entitled to relief.

**III. Conclusion**

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE